Conrad T.E. BEARDSLEY and Lillemor W. BEARDSLEY
*v.* Kathleen PENNINO

CA 85-449                                        717 S.W.2d 825

Court of Appeals of Arkansas
Division II
Opinion delivered October 22, 1986

124

*Honey & Rodgers*, by: *Charles L. Honey*, for appellants.

*Kaplan, Brewer & Miller, P.A.*, by: *Joann C. Maxey*, for appellee.

DONALD L. CORBIN, Judge. This case comes to us from Nevada County Chancery Court. Appellants, Conrad T.E. Beardsley and Lillemor W. Beardsley, appeal the chancellor's decision that granted a set-off to appellee, Kathleen Pennino, for losses she incurred due to appellants' breach of a settlement agreement, entered into by appellants and appellee, and restructured the note payments appellee owes appellants. We affirm.

The parties to this action entered into a settlement agreement which was dictated into the record on January 24, 1984. Under the terms of the settlement agreement, both parties were to perform certain obligations. Appellee was to bring current her debt on a $300,000 note to appellants and appellants were to assume the financial responsibility on certain debts of appellee's. However, appellee's obligation to pay was conditioned on appellants first assuming the financial obligation on her debts. Appellants failed to do so. Consequently, appellee went into default on

some of the debt.

Appellee filed a motion in chancery court to enforce the settlement agreement of January 24, 1984. In her motion appellee also asked that she be allowed a set-off for the amounts she was held in default as well as for other costs incurred by her because of appellants' failure to act. Appellee also asked that she be awarded $49,780.80, which represented the additional costs of financing, at current interest rates, a note on her default judgments and other related costs totalling $155,497.21, as opposed to paying that same amount to appellants at a lower interest rate. By stipulation of the parties, the court determined that the current interest rate in that community was set at thirteen percent (13%). The note to appellants had been set at ten percent (10%). Using an amortization schedule, the court determined that appellee would incur $49,780.80 in additional interest over the next eighteen years, which was the remaining time on the note.

Appellants argue the following two points for reversal:

I.

THE CHANCERY COURT ERRED BY AL-LOWING APPELLEE A SET-OFF OF $49,780.80 FOR THE ESTIMATED ADDITIONAL COST OF SECURING A LOAN TO SATISFY OTHER SET-OFFS ALLOWED.

II.

THE CHANCERY COURT ERRED BY RE-STRUCTURING APPELLEE'S NOTE PAYMENTS TO APPELLANTS SO AS TO REDUCE APPEL-LEE'S MONTHLY PAYMENTS FROM $3,000.00 PER MONTH TO $1,798.00 PER MONTH.

The record indicates that under the terms of the settlement agreement, appellee was to pay appellants $18,000, the amount she was in arrears on a note to appellants, in addition to an amount she owed appellants on an inventory. Appellee was to make payment to appellants on February 17, 1984. On the same date, appellants were to have assumed the obligations on properties upon which appellee is now obligated.

On February 17, 1984, appellee notified plaintiff that she

was ready, willing, and able to perform under the terms of the parties' agreement. Appellants, however, failed to assume the obligations on the properties as agreed upon. Appellee continued to communicate to appellants her readiness to perform according to the terms of the settlement agreement, but appellants failed to carry out the agreement. In June of 1984, a partial foreclosure decree was entered against appellee for property concerned in the settlement agreement.

Appellee filed a motion in chancery court to enforce the January 24, 1981, settlement agreement. The chancellor enforced the settlement agreement, finding that all the parties knew what was required of them under the terms of the agreement. The court specifically found that appellee did not frustrate appellants in their effort to perform their duty under the agreement. The chancellor found that, as a result of appellants' continued refusal to carry out the agreement, appellee suffered losses entitling her to relief in the form of a set-off against the amount she owed to appellants.

■■ As their first point for reversal appellants argue that the court erred by allowing appellee a set-off of $49,780.80 for the estimated additional cost of securing a loan to satisfy other set-offs allowed. Appellants argue that the additional cost of securing a loan to satisfy the other set-offs is an expense which may never be incurred by appellee. In support of their argument appellants cite *Harris Construction Co., Inc. v. Powers*, 262 Ark. 96, 554 S.W.2d 332 (1977), in which the Arkansas Supreme Court discussed the doctrine of avoidable consequences:

> The doctrine of avoidable consequences limits the amount of recoverable damages in that a party cannot recover damages resulting from consequences which he could reasonably have avoided by reasonable care, effort or expenditure. [citations omitted] The doctrine appears equally applicable to damages caused by breach of contract and those caused by negligence. [citation omitted]
> . . .
>
> The burden of proving that a plaintiff could have avoided some or all of the damages by acting prudently rests on the defendant [citations omitted], not only on the question of causation of damages for failure to avoid

harmful consequences [citation omitted], but also on the question of the amount of damage that might have been avoided. [citation omitted] But whether one had acted reasonably in minimizing, mitigating or avoiding damages is, in most cases, a question of fact.

*Id.* at 104-105, 554 S.W.2d at 336 (citations omitted).

■ We find that the *Harris* case cited by appellants does not require reversal of the chancellor's decision. The $49,780.80 set-off is not a recovery for damages resulting from consequences that appellee reasonably could have avoided by reasonable care, effort or expenditure. Appellants failed to abide by the settlement agreement and consequently default judgments were filed against appellee. The chancellor allowed appellee a set-off for the amount of the unpaid deficiency judgment, the unpaid mortgage principal and the interest. In addition, the chancellor awarded appellee a set-off for reimbursement of expenses incurred resulting from appellants' failure to abide by the agreement and for the estimated additional cost of her securing a loan to satisfy the indebtedness caused by appellants' failure.

■ While chancery cases are tried *de novo* on appeal, the findings of a chancellor will not be reversed unless clearly against a preponderance of the evidence; and since the question of the preponderance of the evidence turns largely on the credibility of the witnesses, the appellate court defers to the superior position of the chancellor. *Stover* v. *Stover*, 287 Ark. 116, 696 S.W.2d 750 (1985); ARCP Rule 52(a).

■ The underlying purpose in awarding damages for breach of contract is to place the injured party in as good a position as he would have been in had the contract been performed. *Bowman* v. *McFarlin*, 1 Ark. App. 235, 615 S.W.2d 383 (1981). In matters of equity the court is one of conscience which should be ever diligent to grant relief against inequitable conduct, however ingenious or unique the form may be. *Holland* v. *Walls*, 3 Ark. App. 20, 621 S.W.2d 496 (1981). We find that the chancellor's findings are not clearly against the preponderance of the evidence. Therefore, we find no merit in appellant's first point for reversal.

As their second point for reversal appellants assert that the

chancellor erred by restructuring appellee's note payments to appellants so as to reduce appellee's monthly payments from $3,000 per month to $1,798 per month. The chancellor found that appellee owed appellants the total sum of $351,319.07, less a set-off of $205,278.10, for a net amount of $146,040.97. The court then restructured the amount of the monthly payments from $3,000 to $1,798.

Appellee argues that the purpose of reducing the monthly payments was to place appellee in as good a position as she would have been in had appellants carried out their obligations under the settlement agreement. Appellee notes that if the reduction had not been allowed, appellee would have been unduly burdened by having to make her $3,000 monthly payments to appellants as well as payments to satisfy the default judgments caused by appellants' breach of the agreement. If the chancellor had not reduced the monthly payments, the number of payments to be made would have been reduced. The chancellor found that reducing the amount of the payments, instead of reducing the number of payments, was equitable to all parties. Appellee also notes that the chancellor, in determining the amount of the monthly payments, found that appellants were entitled to the benefit of the current interest rates, thereby increasing the interest appellants received on the balance of the note.

We do not find that the chancellor's findings on this point are erroneous or contrary to the law. As stated above, the damage rule for breach of contract is to place the injured party in as good a position as he would have been in had the contract been performed. A court of equity may mould any remedy that is justified by the proof. *Cox* v. *Cox*, 17 Ark. App. 93, 704 S.W.2d 171 (1986). Appellants breached the contract and the chancellor's order increased the interest rate applied on the balance of the note due them from appellee. We do not believe that appellants should be permitted to complain on this point.

For the reasons stated above we affirm the decision of the chancellor.

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.