ESTATE OF GEORGE M. BRANDON, DECEASED, WILLARD C. BRANDON, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17539-83.          Filed October 31, 1988.

---

*Richard A. Williams,* for the petitioner.
*James W. Lessis,* for the respondent.

## SUPPLEMENTAL OPINION

DRENNEN, *Judge:* This case is before us on remand from the U.S. Court of Appeals for the Eighth Circuit. For purposes of this opinion we will recite only those facts necessary to address the issues presented to us for consideration by the Court of Appeals.

Decedent's will, by codicil, provided a $25,000 cash bequest to his surviving spouse, Chanoy Brandon. Chanoy filed an election to take against decedent's will, pursuant to Arkansas Statutes Annotated section 60-501 (1981),[1] thereby renouncing all benefits under decedent's will. Under the Arkansas statute in effect at the time of the settlement, a female surviving spouse, electing to take against the will was entitled to a dower interest amounting to one-third of decedent husband's property held during their marriage. The decedent husband's estate was valued at $167,172.18 at the date of his death. However, Chanoy had brought suits to invalidate transfers of property, made by the decedent and his first wife (Nina Mae) prior to their deaths. After protracted negotiations, petitioner and Chanoy entered into a settlement agreement, dated June 3, 1980, whereunder Chanoy accepted the sum of $90,000 cash in return for a full and complete release of any and all claims she held against decedent's estate and others. In the estate tax return filed for the decedent's estate, the entire $90,000 was deducted as a marital deduction.

In the notice of deficiency issued to the estate, respondent allowed only $25,000 as a marital deduction on the ground that Chanoy did not have a legally enforceable claim against the estate in excess of that amount. Respondent

---

[1] 60-501. TAKING AGAINST WILL—RIGHTS OF SURVIVING SPOUSE—LIMITATIONS.—When a married man dies testate as to all or any part of his estate, or when a married woman dies leaving as her Last Will and Testament one executed prior to her marriage, the surviving spouse shall have the right to take against the will; and in the event of such election the rights of the surviving spouse in the estate of the deceased spouse shall be limited to the following:

(a) The surviving spouse, if a woman, shall receive dower in the deceased husband's real estate and personal property as if he had died intestate, which dower shall be additional to her homestead rights and statutory allowances;

(b) The surviving spouse, if a man, shall receive a curtesy interest in the real and personal property of the deceased spouse to the same extent as if she had died intestate.

also contended that even if Chanoy's claim to dower was upheld, the maximum marital deduction allowable was $55,724.06, one-third of the value of the estate.[2]

By opinion filed March 10, 1986 (86 T.C. 327), this Court concluded that the settlement was a bona fide recognition of the surviving spouse's rights under the law, and that the settlement amount was properly deductible by decedent's estate as a marital deduction pursuant to section 2056.[3]

On appeal, the U.S. Court of Appeals for the Eighth Circuit reversed and remanded the case to this Court to determine, in the light of *Orr v. Orr*, 440 U.S. 268 (1979); *Ahmanson Foundation v. United States*, 674 F.2d 761 (9th Cir. 1981), and *Stokes v. Stokes*, 271 Ark. 300, 613 S.W. 2d 372 (1981):

1. The constitutionality of the Arkansas dower statute (Ark. Stat. Ann., Sec. 60-501) at the time the settlement was reached;

2. Whether surviving spouse had an enforceable right under state law to amounts in excess of one-third of decedent's gross estate; and

3. Whether decedent's estate should be allowed an estate tax marital deduction for property passing to a surviving spouse which was not included in decedent's gross estate for Federal estate tax purposes.

We will first consider whether the Arkansas dower statute (60-501) was constitutional at the time the settlement agreement was reached. The simple answer to this question would seem to be that if the statute was found to be unconstitutional by the Arkansas supreme court at the time the *Stokes* decision was rendered (February 23, 1981), it must also have been unconstitutional at the time the settlement was reached (June 3, 1980). There were no changes in the Arkansas dower statute between the date of the settlement agreement and the date of the *Stokes* decision so if the dower statute was unconstitutional when *Stokes* was decided, it was also unconstitutional at the date of the settlement agreement. However, we gather from the mandate of the Eighth Circuit that it did not want us to

---

[2]This is one-third of the value of the personal property listed on the estate tax return filed for the estate ($167,172.18). Pursuant to the stipulation of agreed adjustments, filed with this Court on June 4, 1985, the parties agreed that the decedent made certain transfers during his life which were properly included in the gross estate in the amount of $103,356.

[3]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended as of the date of the decedent's death. All Rule references are to the Tax Court Rules of Practice and Procedure.

take such a simplistic approach to this question, so we will examine it further.

While the Supreme Court of Arkansas had not spoken on the constitutionality of the dower statute at the time the settlement agreement was signed, shortly thereafter in *Stokes v. Stokes, supra,*[4] and in a similar case, *Hess v. Wims,* 272 Ark. 43, 613 S.W. 2d 85 (1981), it held that the Arkansas dower statute did not satisfy the test set forth by the U.S. Supreme Court in *Orr,* and was thus unconstitutional. Thus, an initial consideration in our analysis of the statute in question is whether subsequent decisions have an impact on the constitutionality of the statute at the time the settlement agreement was executed.

The Arkansas Supreme Court in *Hall v. Hall,* 274 Ark. 266, 623 S.W. 2d 833 (1981), cert. denied 456 U.S. 916 (1982), discussed the retroactive nature of its decisions in *Stokes v. Stokes, supra,* and *Hess v. Wims, supra.* The *Hall* court, citing *Stokes,* denied a widow's claim to a dower interest based upon equal protection grounds. However, the court was careful to note the prospective nature of such precedent:

A constitutional decision such as *Stokes* or *Hess* has never been completely retroactive in the sense that a widow who was awarded her statutory dower some years before those cases were decided could now be stripped of her estate at the demand of a disgruntled heir. The death knell of our gender-based statutes governing the widow's dower and allowances was actually sounded on March 5, 1979, when the Supreme Court decided *Orr v. Orr,* 440 U.S. 268, 99 S. Ct. 1102, 59 L. Ed. 2d 306. After that pronouncement the invalidity of our statutes was promptly raised in *Stokes,* in *Hess,* and in the case at bar, before the rights of the widows had finally vested. * * * [274 Ark. at 268, 623 S.E. 2d at 834.]

The court seems to look at the time of vesting as an important factor in determining whether a constitutionally invalid statute will be enforced in a given circumstance. In this case, Chanoy's rights most probably vested on June 3, 1980—the date the settlement agreement was reached and the case was dismissed. This places her after *Orr,* yet before *Stokes.* In light of *Hall,* it would seem that *Stokes* should not have a retroactive impact with regard to our analysis of

---

[4]In an earlier opinion dated Dec. 8, 1980, the court reached a different conclusion.

the constitutionality of the Arkansas dower statute in June 1980.

Further support for the inapplicability of *Stokes* in our constitutional analysis here can be found in *Mobley v. Estate of Parker,* 278 Ark. 37, 642 S.W. 2d 883 (1982). In *Mobley,* the Arkansas Supreme Court declined to give *Stokes* retroactive effect because it deemed the subject dower interest to have been vested:

> In *Hall,* we stated that a widow who had received her statutory dower in earlier years could not be stripped of her estate at a later time because the statutes under which she had been awarded her estate had been declared unconstitutional. We agree that *Stokes* and *Hess* are not to be given retroactive effect in the present case.
>
> Had there been no activity in this case between the time of our decision of February 19, 1979, and the institution of the present suit, our holding may have been different. However, the facts of the present case indicate that the widow and heirs of Parker treated the dower interest as having been vested.  * * *
>
> [278 Ark. at 39, 642 S.W. 2d at 884.]

Again, the Arkansas court is hesitant to apply, and in fact does not apply, *Stokes* retroactively. This is consistent with the approach of some other jurisdictions which have addressed the retroactive effect of invalidated State statutes. See, e.g., *Chevron Oil Co. v. Huson,* 404 U.S. 97 (1971) (three factors to be considered in determining retroactive application). We are thus left with *Orr,* alone, as a guide for our analysis.

In *Orr,* the U.S. Supreme Court recognized that classifications based upon sex, such as that in the Arkansas dower statute, are subject to scrutiny under the equal protection clause. In invalidating an Alabama statute which permitted alimony for women only, the *Orr* Court employed the following test, which had been used in earlier cases: "To withstand scrutiny  * * *  classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." *Orr v. Orr,* 440 U.S. at 279 (citing *Califano v. Webster,* 430 U.S. 313, 316-317 (1977)).

An analysis of the constitutionality of the Arkansas dower statute thus begins with an identification of an important Government objective. The *Orr* Court listed two

such objectives, which were also recognized in *Hatcher v. Hatcher*, 265 Ark. 681, 580 S.W. 2d 475 (1979):

(1) to provide help for needy spouses, using sex as a proxy for need and (2) to compensate women for past discrimination during marriage which arguably has left them unprepared to fend for themselves in a working world * * *
[440 U.S. at 280.]

Although these objectives address the validity of an alimony statute, they are still instructive in our analysis of the Arkansas dower statute.

A number of gender-oriented objectives have already been rejected by the U.S. Supreme Court. See *Frontiero v. Richardson*, 411 U.S. 677 (1973) (administrative convenience rejected as a basis for sex discrimination); *Reed v. Reed*, 404 U.S. 71 (1971) (statute denying women right to be administrators of estates, based in part on administrative convenience held unconstitutional).

The Court has, however, found valid governmental objectives to support gender-based classification. See *Kahn v. Shevin*, 416 U.S. 351 (1974) (statute which allows homestead tax exemption only for women, reasonably designed to further the State policy of cushioning financial impact of spousal loss upon the sex for whom the loss imposes a disproportionately heavy burden); *Califano v. Webster*, 430 U.S. 313 (1977) (social security statute allowing women, in computing their average monthly wages, to exclude 3 fewer earning years than similarly situated men ).

The legislative history of Arkansas Statutes Annotated section 60-501 sheds little light on its underlying purpose. Dower is generally designed to sustain the widow and to provide for the nurture and education of her children. 25 Am. Jur. 2d, Dower and Curtesy, sec. 9 (1966). Another fair implication of the statute is that it was designed to protect female spouses from economic plight rendered as a result of years out of the labor force. These may well be deemed important governmental purposes. However, the use of gender as a proxy to satisfy such goals is highly suspect.

The *Orr* Court recognized the danger inherent in any statute which discriminates on the basis of sex and cautioned that such a statute must be carefully drafted:

Legislative classifications which distribute benefits and burdens on the basis of gender carry the inherent risk of reinforcing stereotypes about the proper place of women and their need for equal protection. * * * even statutes purportedly designed to compensate for and ameliorate the effects of past discrimination must be carefully tailored. Where, as here, the State's compensatory and ameliorative purposes are as well served by a gender-neutral classification as one that gender classifies and therefore carries with it the baggage of sexual stereotypes, the State cannot be permitted to classify on the basis of sex. [440 U.S. at 281.]

This language leaves little room for the gender-based vehicle employed by Arkansas Statutes Annotated section 60-501. Even if the statute had a valid governmental objective, such as the protection of a widow, that objective could easily be satisfied with a gender-neutral statute. In fact, after the *Stokes* decision expressly invalidated section 60-501 (1987), the Arkansas legislature replaced it with a gender-neutral dower statute. See Ark. Stat. Ann. sec. 28-39-401. See also *In re Estate of Epperson,* 284 Ark. 35, 679 S.W. 2d 792 (1984) (upholding constitutionality). Hence, we find that Arkansas Statutes Annotated section 60-501 was unconstitutional at the time Chanoy's settlement agreement was executed.

Section 2056 governs the availability of the estate tax marital deduction. The relevant provisions are as follows:

(a) ALLOWANCE OF MARITAL DEDUCTION.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

* * * * * * *

(d) DEFINITION.—For purposes of this section, an interest in property shall be considered as passing from the decedent to any person if and only if—

* * * * * * *

(1) such interest is bequeathed or devised to such person by the decedent;

* * * * * * *

(3) such interest is the dower or curtesy interest (or statutory interest in lieu thereof) of such person as surviving spouse of the decedent * * *

The requirement in the above Federal statute that the property interest "passes or has passed" from decedent to his surviving spouse applies to transfers of property interests in other ways; it is not limited to only dower or curtesy interests. This is important here because, since we have concluded that the Arkansas dower statute (Ark. Stat. Ann. sec. 60-501) was unconstitutional at the time of the settlement, there could have been no passing of a dower interest. Instead, the property which Chanoy received passed to her under decedent's will, not the settlement. So, section 2056(d)(1), rather than section 2056(d)(3), is controlling.

The Eighth Circuit, relying on *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967), and *Ahmanson Foundation v. United States,* 674 F.2d at 775, stated in *Estate of Brandon v. Commissioner,* 828 F.2d 493, 499 (8th Cir. 1987), that "a good faith settlement or judgment of a lower state court must be based on an enforceable right, under state law properly interpreted, in order to qualify as 'passing' pursuant to the estate tax marital deduction," citing *Ahmanson Foundation v. United States, supra.* Here the settlement agreement, itself, does not determine the source and nature of Chanoy's legal rights and allegations—the will does. Hence, we are not concerned with whether the settlement agreement was based on an enforceable right. Even if Chanoy had been successful in her claims to invalidate the property transfers of decedent and Nina Mae, those properties would have been placed back into the estate. In that event, Chanoy would only have an enforceable right, for purpose of the estate tax marital deduction, to those properties through the decedent's will. Thus Chanoy did not have an enforceable right for estate tax purposes against the estate for more than $25,000 as provided in the will. The marital deduction must thus be limited to $25,000.

We are next asked to determine whether Chanoy had an enforceable right, under State law, to amounts in excess of one-third of decedent's gross estate. Since we have concluded that the estate was entitled to a marital deduction for only the $25,000 Chanoy was entitled to under the will, which was less than one-third of decedent's gross estate, this question is moot.

Clearly the court - sanctioned settlement agreement was enforceable against the estate for the full $90,000 in Arkansas (15A Am. Jur. 2d, Compromise and Settlement, sec. 37 (1976); *Beardsley v. Pennino,* 19 Ark. App. 123, 717 S.W. 2d 825 (1986)). It is only because we have engaged in a retrospective analysis of the constitutionality of Arkansas Statutes Annotated section 60-501, that we reach a different view of Chanoy's enforceable rights for purposes of the estate tax marital deduction. Absent that determination, petitioner may well have had the right to deduct amounts transferred to Chanoy by the settlement agreements. Sec. 20.2056(e)-2(c), Estate Tax Regs.

Finally, we are asked to consider whether decedent's estate should be allowed an estate tax marital deduction for property passing to a surviving spouse which was not included in decedent's gross estate for estate tax purposes. Section 2056(a) explicitly states that the estate tax marital deduction is only available "to the extent that such interest is included in determining the value of the gross estate." This requirement essentially avoids abuse of the broadly defined "passing" requirement of section 2056(d)(4), which includes property "transferred" by the decedent to his surviving spouse "at any time" (sec. 2056(d)(4)).

The problem here is that Chanoy did not take specific property which could be easily traced from the gross estate. Since she took only money, we cannot be sure whether the property passing to Chanoy was included in the gross estate or not. However, respondent did not increase the gross estate by any amount that might have been used to pay the settlement but was not reported in the gross estate. Thus, it would appear that the $25,000 Chanoy was entitled to under the will, or otherwise, was included in the gross estate, and respondent does not claim to the contrary.

If this inquiry has reference to the properties transferred by Nina Mae or George to their children prior to their deaths, it was stipulated that the decedent made certain transfers during his life which were properly included in the gross estate in the amount of $103,306, so that those properties were included in the gross estate for estate tax purposes.

In light of the foregoing, we hold that petitioner is entitled to an estate tax marital deduction of $25,000.

*Decision will be entered under Rule 155.*