# TREMCO, INC. *v.* VALLEY ALUMINUM PRODUCTS CORP.

CA 91-125 831 S.W.2d 156

Court of Appeals of Arkansas
Division II
Opinion delivered May 13, 1992

*Howell, Price, Trice, Basham & Hope, P.A.*, by: *J. Douglas Smith*, for appellant.

*Carl A. Crow, Jr.*, for appellee.

JUDITH ROGERS, Judge. The appellant, Tremco, Inc., appeals from a jury verdict in favor of appellee, Valley Aluminum Products Corporation, finding that appellant was in breach of both express and implied warranties in connection with its sale of defective window gaskets, and awarding damages as a result thereof. On appeal, appellant does not question the jury's finding of liability. For reversal, appellant contends that the trial court erred in allowing the jury to assess damages for lost profits and the replacement costs of the gaskets. We find no error, and affirm.

Appellee, a curtain wall manufacturer, entered into a contract with Win-Wall, Inc., a glazing subcontractor, to provide window assemblies for two commercial buildings, one to be constructed in New York and the other in Connecticut. In turn, appellee contracted with appellant to design and manufacture the gaskets for the window assemblies. The gaskets were custom designed for the building projects by appellant based on die drawings and a sample production run of the window assemblies sent to it by appellee. Appellant shipped the gaskets directly to the construction sites where they were fitted into the window assemblies by Win-Wall, Inc. After the window assemblies had been installed, however, a problem was identified with the gaskets. The function of gaskets in a window assembly was said to provide compression to hold the unit together for purposes of providing a seal against air infiltration and water penetration, as well as to provide structural support for the glass. The gaskets in this case, however, did not fit, and began to droop, sag and fall out of the

window assemblies. There was testimony at trial that the gaskets were not properly designed.

After attempts to resolve the problem proved unsuccessful, appellant sued appellee for the unpaid balance on its open account which appellee had refused to pay. Appellee filed a counterclaim against appellant alleging the breach of express and implied warranties and seeking both direct and consequential damages. The issues were submitted to the jury on interrogatories. The jury returned a verdict in favor of appellant for the amount appellee owed on the open account, $1,201.42. It also awarded appellee damages on its counterclaim in the amounts of $7,650 as the difference in value of the gaskets as accepted and warranted, $58,850 in lost profits, and $93,000 for the costs associated with replacing the gaskets.

As its first issue, appellant argues that the trial court erred in allowing the jury to assess consequential damages for lost profits. Appellee's claim for anticipated profits was based on the allegation that Win-Wall, Inc. had refused to allow it to bid on subsequent contracts as a result of the problem with the gaskets; therefore, it sought consequential damages in the form of profits lost on the contracts it would have received from Win-Wall, Inc. had appellant not supplied defective gaskets. Appellant characterizes this claim for damages as a loss of good will, and argues that such damages are not recoverable as being speculative, not reasonably certain, and an unforeseeable consequence of its breach. Appellant objected to the evidence and the jury instruction offered on this element of damages and further raised this issue by motions for a directed verdict and judgment notwithstanding the verdict.

Consequential damages resulting from a seller's breach include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. Ark. Code Ann. § 4-2-715(2)(a) (1987). While lost profits will not be allowed as damages if the trier of fact is required to speculate as to the fact or amount of profits, less certainty is required to prove the amount of lost profits than is required to show that profits were lost. *Reed* v. *Williams*, 247 Ark. 314, 445 S.W.2d 90 (1969). If it is reasonably

certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover. *Crow* v. *Russell*, 226 Ark. 121, 289 S.W.2d 195 (1956). Loss may be determined in any manner which is reasonable under the circumstances. *Green Seed Co. of Ark.* v. *Williams*, 246 Ark. 463, 438 S.W.2d 717 (1969). The fact that a party can state the amount of damages he suffered only approximately is not a sufficient reason for disallowing damages if from the approximate estimates a satisfactory conclusion can be reached. *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). With respect to breach of warranty, lost profits are held to be foreseeable if they are proximately caused by and are the natural result of the breach. *Lewis* v. *Mobil Oil Corp.*, 438 F.2d 500 (8th Cir. 1971).

The testimony presented on this issue was as follows. Tony Dinapoli, the president of Win-Wall, Inc., related that he had first met Jerry Brown, the president of appellee-Valley Aluminum, when Brown had been working for another company. Mr. Dinapoli said that he saw Mr. Brown at a convention and learned that Brown had formed his own company, Valley Aluminum. Dinapoli testified that he was looking to procure another supplier at that time. He explained tht he had been doing business for years with only one metal supplier and he no longer wished to be "locked in" with that one company. He recalled that he had previously gotten along well with Mr. Brown, and stressed that a company's reputation was as important as the prices offered when choosing a company with which to do business. Therefore, he decided to establish a relationship with Mr. Brown and Valley Aluminum to accomplish his goal of obtaining another supplier. Appellee was thus awarded the contracts on these two projects as well as another one involving the construction of a library.

Mr. Dinapoli described the problem with the gaskets as "major," and said that he looked to appellee to correct it. He testified that because of the problem he had withheld $6,000 still owing under the contract with appellee, and further, that he had refused to allow appellee the opportunity to bid on subsequent projects. Mr. Dinapoli listed ten contracts he had been awarded since the gasket incident, totalling $1,408,000, which required materials of the kind supplied by appellee. He said that he was "very confident" that he would have sublet at least half of them to appellee but for the problem experienced with the gaskets. In

keeping with his testimony that he desired another supplier, Dinapoli acknowledged that he had let 25% of these contracts to another concern, stating that appellee would have received a higher percentage because appellee had a larger product line.

John Brown testified that he had been told by Mr. Dinapoli that he would receive no further business from him as long as the gasket problem existed, and that, in fact, he had not had any further dealings with Dinapoli. He also gave testimony that his average profit margin during this period of time was 20.27%. Brown further testified that he told representatives of appellant that he treasured the business from Win-Wall and that it was a key account. Wayne Taylor, a former employee with appellant, testified that Brown told him that he had developed this business relationship with Win-Wall and that he was expecting more business in the future.

In arguing that damages of the kind claimed here are not recoverable, appellant places principal reliance on the decision of *Sol-O-lite Laminating Corp.* v. *Allen*, 353 P.2d 843 (Or. 1960). From our reading of this case, we do not believe it is supportive of appellant's view. As in the case at bar, there was evidence that customers were lost as a result of the breach of warranty. Contrary to appellant's assertion, the Oregon Supreme Court held that damage to good will by breach of warranty was compensable in that case, saying:

> We believe it is a proper basis for the recovery of damages in an otherwise adequate case of breach of warranty where, as in this case, there is evidence that the seller knew the goods were being purchased for resale for a use which required a certain standard of clarity and that they were being resold with similar goods which were sold under the purchaser's trade name. Such damages then can hardly be said not to be within the contemplation of the parties.

*Id.* at 850.

Although appellant refers us to additional cases from other jurisdictions, we need look no further than our own supreme court's decision in *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). The appellee in that case was a concert promoter who had sued appellant for breach of contract, fraud

and negligence arising from appellant's failure to procure Rick Nelson for a concert benefit. Bonar presented testimony that concert promoters would not hire him because of what had happened with the Rick Nelson concert, and he claimed lost profits for the damage to his reputation. It was the appellant's contention on appeal that damages for lost profits based on the loss of potential future earnings was improper as being speculative and conjectural. The supreme court disagreed and found sufficient proof to support the jury's award. *See also e.g. Lee Rubber & Tire Corp.* v. *Camfield*, 233 Ark. 543, 345 S.W.2d 931 (1961).

■■ On appellate review of a trial court's denial of a motion for a directed verdict or a motion for a judgment notwithstanding the verdict, we must determine whether the verdict is supported by any substantial evidence. *Johnson Timber Co.* v. *Sturdivant*, 295 Ark. 622, 752 S.W.2d 241 (1988). In cases in which it is contended that the evidence is insufficient to support the appellee's claim, the evidence, along with all reasonable inferences deducible therefrom, is examined in the light most favorable to the party against whom the motion is sought. *See Thomas* v. *Allstate Ins. Co.*, 27 Ark. App. 27, 766 S.W.2d 31 (1989). Viewed in this light, we cannot agree with appellant's contention that the evidence does not support an award for lost profits under the circumstances of this case. We think that there was substantial evidence introduced showing that appellee suffered a loss in profits as a consequence of the breach, and that there was substantial evidence presented as to the amount of its loss. We also believe that the type of loss here is one that could be reasonably expected to flow from the breach. We find no error on this point.

It is also the appellant's contention that the award of damages for the cost of replacing the gaskets is speculative because this expense had not yet been incurred and because appellee was under no legal obligation to make the repairs. We disagree.

There was testimony adduced that the use of caulking or other sealants to shore up the window assemblies was not a viable solution, and that the deglazing of both buildings to replace the gaskets was required to correct the problem. It was estimated that

the cost of this undertaking would be $93,000, which is the amount that the jury awarded. Mr. Dinapoli testified that he looked to appellee to make the necessary repairs, and that he would not pay appellee the outstanding balance on the contract or allow him to bid on projects until these measures were taken. He also asserted that taking care of problems is necessary in order to survive in the business.

 Professors White and Summers have expressed disapproval of the position taken by appellant that these damages are not recoverable in the absence of a legal obligation. 1 J. White & R. Summers, Uniform Commercial Code § 10-4 (3rd ed. 1988). Instead, the authors agree with the decision in *Woodbury Chemical Co.* v. *Holgerson*, 439 F.2d 1052 (10th Cir. 1971), in which it was held that the plaintiff in the aerial insecticide spraying business could recover as consequential damages the costs of respraying from the seller of inferior weedkiller when it was the accepted practice in the business to respray if the first spray was ineffective, even though the plaintiff was under no legal obligation to respray. The authors favor this approach in that it recognizes practical obligations that require a businessman to conform to custom and usage in his trade in order to remain in business. We are also persuaded by this reasoning and find it applicable here. Consequently, we find no error in the trial court's ruling on this issue.

Affirmed.

CRACRAFT, C.J., and JENNINGS, J., agree.