QUALITY TRUCK EQUIPMENT COMPANY
*v.* Mike LAYMAN

CA 94-1243　　　　　　　　　　　　912 S.W.2d 18

Court of Appeals of Arkansas
Division I
Opinion delivered December 20, 1995

196

*Snellgrove, Laser, Langley & Lovett & Culpepper*, by: *Todd Williams*, and *Barrett & Deacon*, by: *D. P. Marshall, Jr.*, for appellant.

*Woodruff & Huckaby, P.A.*, by: *Arlon L. Woodruff*, for appellee.

JUDITH ROGERS, Judge. Quality Truck Equipment Company has appealed from a judgment in the amount of $54,750.00 entered against it for appellee, Mike Layman d/b/a Layman Seed Company, following a jury verdict. The only issue on appeal is whether the jury verdict is supported by substantial evidence. We hold that it is and affirm.

In 1990, appellee leased a Stahly field applicator, which is a large air-activated fertilizer applicator, from Mid-South Ag Equipment, Inc., in Memphis, Tennessee. The lease included an option to purchase the machine. Appellant assembled the chassis for the machine and sold it to Mid-South Ag, which, in turn, added the spray system and leased the truck to appellee. Appellee used the applicator without mishap during the spring and fall of 1990 and exercised the option to purchase in December of that year.

In the spring of 1991, the applicator began breaking down with severe problems in the rear axle. The first time that the rear axle broke, appellee submitted an accident claim to his insurance carrier, which ultimately paid that repair bill. When appellee notified Mid-South of the breakdown, Gary Reed, Mid-South's representative, directed appellee to tow the applicator to Jonesboro, Arkansas. Mr. Reed assured appellee that the problem would be taken care of and that the applicator was covered by warranty. It took one day to get the truck towed to Jonesboro. Appellee was told that he would be contacted the next day, but the time passed. After eight or nine days, appellee was told of the rear axle problem. Appellee again contacted Mid-South and was advised to turn it in on the insurance policy and not to worry about it. The applicator was down for repairs twelve to thirteen days.

Appellee used the applicator on June 6, 1991. After covering 40 acres, the rear end failed again. Appellee called Town & Country, the company which warranted the repaired machine. A person was sent to the location and the rear end was pulled and taken to Jonesboro. The next day a new rear end was installed.

In April of 1992, while on a job, the applicator began making a loud popping sound in the rear end. Appellee tried to drive the truck to Lepanto, which is three miles away, but the rear end exploded. That day, which was a Sunday, he called J&O Diesel. J&O came that afternoon and pulled the rear end out of the applicator. The rear end was taken to Truck Parts Specialists in Memphis, which rebuilt it the next day. Monday night J&O and appellee met on the side of the road where the applicator had been sitting and put the truck back together. Appellee called Mid-South on Monday and made them aware of the problem.

In October of 1992, the applicator broke down again. J&O diesel came again and pulled the rear end out while the machine sat in the field. The rear end was taken to Truck Parts, where it was rebuilt.

The applicator went down again in November of 1993, and appellee called Diesel Services Unlimited, a repair shop in Hughes.

In May 1994, appellee sued appellant and Mid-South for breach of warranty. Mr. Layman testified that he lost a total of

$68,775.00 in business because of the rear end failures over a four-year period and expended a total amount of $9,961.51 in repairs. The jury awarded appellee $73,000.00 and apportioned fault as follows: Mid-South Ag — 15%; appellant — 75%; appellee — 10%. The circuit judge then entered judgment for appellee against appellant in the amount of $54,750.00.

On appeal, appellant argues that the verdict is not supported by substantial evidence because appellee did not mitigate his damages. Appellant admits that appellee incurred damages for the repairs but argues that it should be liable for no more than eight days of lost profits at $2,450.00 per day because appellee did not promptly repair the field applicator each time that it broke down.

On appeal from a jury verdict, this court views the evidence in the light most favorable to the appellee and affirms if that evidence is substantial. *Little Rock Wastewater Util.* v. *Larry Moyer Trucking, Inc.*, 321 Ark. 303, 311, 902 S.W.2d 760 (1995). Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable and material certainty; it must force the mind to pass beyond suspicion or conjecture. *Minerva Enters., Inc.* v. *Howlett*, 308 Ark. 291, 295, 824 S.W.2d 377 (1992).

When a party seeks to recover anticipated profits under a contract, he must present a reasonably complete set of figures to the jury and not leave the jury to speculate as to whether there could have been any profits. *Little Rock Wastewater Util.* v. *Larry Moyer Trucking, Inc.*, 321 Ark. at 312. Lost profits must be proven by evidence showing that it was reasonably certain the profits would have been made had the other party carried out its contract. *Id.* While lost profits will not be allowed as damages if the trier of fact is required to speculate as to the fact or amount of profits, less certainty is required to prove the amount of lost profits than is required to show that profits were lost. *Tremco, Inc.* v. *Valley Aluminum Prods. Corp.*, 38 Ark. App. 143, 145, 831 S.W.2d 156 (1992). Loss may be determined in any manner which is reasonable under the circumstances. *Id.* at 146. With respect to breach of warranty, lost profits are held to be foreseeable if they are proximately caused by and are the natural result of the breach. *Id.* The question of damages, both as to measure and

amount, is a question of fact. *Carter* v. *Quick*, 263 Ark. 202, 210, 563 S.W.2d 461 (1978).

■ The doctrine of avoidable consequences limits the amount of recoverable damages. It provides that a party cannot recover damages resulting from consequences which he could have avoided by reasonable care, effort, or expenditure. *Beardsley* v. *Pennino*, 19 Ark. App. 123, 126, 717 S.W.2d 825 (1986). It has often been stated that a plaintiff must use due diligence to minimize his damages and must do nothing to aggravate his loss. *Gibson* v. *Lee Wilson & Co.*, 211 Ark. 300, 310-11, 200 S.W.2d 497 (1947). "[W]here a party is entitled to the benefit of a contract, and can save himself from loss arising from a breach thereof at a small expense or with reasonable exertions, it is his duty to do so, and he can only recover such damages as he could not thereby prevent." *Curtner* v. *Bank of Jonesboro*, 175 Ark. 539, 541, 299 S.W. 994 (1927). *Accord Wisconsin & Ark. Lumber Co.* v. *Scott*, 167 Ark. 84, 87, 267 S.W. 780 (1924).

■ The determination of whether one has acted reasonably in mitigating damages is, however, a question of fact. *Crain Indus., Inc.* v. *Cass*, 305 Ark. 566, 577, 810 S.W.2d 910 (1991); *Western Grove School Dist.* v. *Strain*, 288 Ark. 507, 510, 707 S.W.2d 306 (1986); *Coomer* v. *National Credit Corp.*, 282 Ark. 299, 301, 668 S.W.2d 521 (1984). *See also Harris Constr. Co.* v. *Powers*, 262 Ark. 96, 105, 554 S.W.2d 332 (1977); *Beardsley* v. *Pennino*, 19 Ark. App. at 127. Further, the burden of proving that a plaintiff could have avoided some or all of the damages by *acting* prudently rests on the defendant, not only on the question of damages for failure to avoid harmful consequences, but also on the question of the amount of damage that might have been avoided. *Id.* at 126-27.

Appellant argues that the rapidity with which appellee managed to have the equipment repaired the second and third times that it broke down shows that appellee unreasonably delayed getting the equipment repaired the first, fourth, and fifth times it broke down. Appellant also argues that the testimony of its witness, Mike Kelly, that repairs usually take about half a day, supports its position. Appellee points out, however, that Mike Kelly admitted that he had never encountered any axle problems as were involved in this case and did not testify as to how long it

should take to repair such problems. In fact, appellant offered no testimony in support of its defense that appellee took too long in repairing the equipment.

Further, appellee testified that, when the equipment first broke down, he contacted Mid-South's agent, Gary Reed, who told him to tow the truck to the nearest authorized dealer, which was in Jonesboro, and that appellee reluctantly followed Mr. Reed's advice. According to appellee, when he got the truck to Jonesboro, Mr. Reed informed him that he had talked to Terry Stahly, appellant's owner, who said that the truck was under warranty and that there would be no problem. Appellee said that, although Mr. Reed told him that they would get back with him "tomorrow," the problem dragged on.

We are troubled by the scant amount of evidence submitted by appellee regarding the reasonableness of his efforts to promptly repair the equipment. Nevertheless, the burden rested upon appellant to prove that appellee could have avoided most of these damages, and this it failed to do. Accordingly, we hold that the amount awarded by the jury is supported by substantial evidence.

Affirmed.

PITTMAN and MAYFIELD, JJ., agree.