2010 Ark. App. 758

**Helen COOK, Appellant**

v.

**Lane COOK, Tanya Cook Gilbreath, and Bryan Cook, Appellee.**

**No. CA 09–1317.**

Court of Appeals of Arkansas.

Nov. 10, 2010.

Gibson & Gibson, P.A., Sam Edward Gibson, Benton, for appellant.

Harrell, Lindsey & Carr, P.A., Searcy W. Harrell, Jr., Paul Everett Lindsey, Camden, for appellee.

RITA W. GRUBER, Judge.

Helen Cook appeals from an order of the Ouachita County Circuit Court finding that she violated the terms of an agreement between her and her stepchildren by selling shares of stock and removing the funds from an account the stepchildren owned. The court found that the agreement granted Ms. Cook all dividends and interest generated by the account during her lifetime and required her to purchase the specific type and amount of shares that she sold. Ms. Cook also appeals from an order awarding attorney's fees to appellees. We find no clear error, and we affirm the orders of the circuit court.

Helen Cook was married to Dale Cook for twenty-six years. Appellees, Lane Cook, Tanya Cook Gilbreath, and Bryan Cook, are the three adult children of Dale Cook and the stepchildren of Ms. Cook. After Mr. Cook's death, appellees and Ms. Cook entered into a Family Settlement Agreement, dated March 24, 2008 (the "original agreement"), and a Settlement Agreement dated September 2008 concerning certain property of Mr. Cook. Pursuant to the agreements, and of relevance to this appeal, Ms. Cook was to remain as the beneficiary of an individual retirement account held at Investment Professionals, Inc., and was required to designate appellees as irrevocable beneficiaries of the account at her death. The original agreement provided that Ms. Cook "will have the use and benefit of any dividends and/or interest accruing on said account during her lifetime, thereby reserving the principal of the account."

In order to resolve disputes about the original agreement, the parties entered into the second agreement in September 2008, changing ownership of a house owned by Mr. Cook. In the original agreement, Ms. Cook retained a life estate with appellees owning the remainder interest in the property. In the September agreement, the parties agreed that appellees would convey all of their interest in the property to Ms. Cook, who would own the house in fee. With regard to the IRA, the new agreement clarified that the account held with Investment Professionals, Inc., was now located at Scottrade. It also stated that the Family Settlement Agreement dated March 24, 2008, remained in full force and effect except as set forth in the new agreement.

This dispute began in February 2009, when Ms. Cook sold all of the securities in the Scottrade account and had the funds wired to her bank account at Farmers Bank in Camden. Through email notices sent to him by Scottrade on February 4, 2009, Lane Cook learned of the securities' sales. Appellees filed a complaint on February 9, 2009, and an amended complaint and petition for preliminary and permanent injunction on February 17, 2009.

In their amended complaint, appellees alleged that Ms. Cook had sold all of the stock in the Scottrade account, consisting of shares of Wal–Mart stock and R.J. Reynolds stock, in violation of the agreements between the parties. Appellees requested the court to enjoin Ms. Cook from disposing of any of the proceeds from the sale of the stock and to grant judgment against Ms. Cook for the full amount of the stock sold. Appellees also requested the court to grant a temporary restraining order and permanent injunction against Farmers Bank & Trust Co. from disposing of the funds until the lawsuit was resolved. Appellees also requested attorney's fees.

On February 26, 2009, the circuit court held a hearing on the temporary restraining order and entered an order indicating that Ms. Cook's attorney informed the

court that the funds had been placed in an account with Morgan Stanley (formerly Dean Witter); finding that the principal of the funds belonged to appellees, with Ms. Cook having the lifetime rights to the income therefrom; ordering Ms. Cook to furnish appellees with documentation as to the amount, location, and type of account established with the funds; and enjoining her from disbursing or removing any of the funds, wherever held, without prior order of the court. On February 27, 2009, Ms. Cook transferred the funds to Morgan Stanley and established an account.

The circuit court held a final hearing on April 28, 2009, and entered an order on July 9, 2009. In its order, the court found that the agreements between the parties provided that Ms. Cook was to have the use and benefit of any dividends and interest accruing on the Scottrade account during her lifetime and that the principal of the account was "reserved" for appellees. The court found that Ms. Cook caused all of the stocks in the account to be sold and the funds transferred to her by wire transfer, and that the removal of these funds violated the terms of the parties' agreements. In order to put the parties back, as closely as possible, into the position that they would have been in had Ms. Cook not breached the agreements, the court ordered the funds to be left at Morgan Stanley; required the funds to be used to acquire the precise number of shares of Wal–Mart and R.J. Reynolds stock that Ms. Cook sold, 177 shares and 1,850 shares respectively; and ordered Ms. Cook to add funds of her own as required in the event the funds were insufficient to purchase these shares. The court determined that the "basic ownership" of the account was in appellees and that Ms. Cook "shall have no ownership interest therein." The court ordered all dividends and interest from the account to be distributed to Ms. Cook for the remainder of her lifetime. On Novem-

ber 10, 2009, after a hearing, the court granted appellees' request for attorney's fees. Ms. Cook filed timely appeals from both orders.

Our standard of review on appeal from a bench trial is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *Carpenter v. Layne*, 2010 Ark. App. 364, 374 S.W.3d 871; Ark. R. Civ. P. 52(a). We view the evidence in a light most favorable to the appellees, resolving all inferences in favor of the appellees. *McSparrin v. Direct Ins.*, 373 Ark. 270, 272, 283 S.W.3d 572, 574 (2008). Disputed facts and determinations of the credibility of witnesses are within the province of the factfinder. *McQuillan v. Mercedes–Benz Credit Corp.*, 331 Ark. 242, 249, 961 S.W.2d 729, 733 (1998).

### I. Contract Interpretation

Ms. Cook's first point on appeal is that the circuit court erred in its interpretation of the original agreement and effectively rewrote it. She contends that the agreement did not require the funds to remain in a particular institution or restrict how she was to invest them in the account. Thus, she argues that she did not breach any provisions of the agreement by moving the funds or by investing the money in a form other than a specified number of R.J. Reynolds shares and a specified number of Wal–Mart shares. She contends that the court's interpretation otherwise is clearly erroneous.

The first rule of interpretation of a contract is to give the language employed the meaning that the parties intended. *First Nat'l Bank v. Griffin*, 310 Ark. 164, 169, 832 S.W.2d 816, 819 (1992). It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words

or phrases, but from the whole context of the agreement. *Id.* at 170, 832 S.W.2d at 819. We must look to the contract as a whole and the circumstances surrounding its execution to determine the intention of the parties. *Id.* at 170, 832 S.W.2d at 820.

■ Ms. Cook misconstrues exactly what the circuit court found. Essential to the circuit court's findings that the agreement did not authorize Ms. Cook to move the funds or choose the investments for the account is its view that Ms. Cook did not own the funds. In its initial ₆order granting appellees' request for a temporary restraining order, the circuit court found that "the principal of the Scottrade Funds belongs to the [appellees] with ... [Ms. Cook] having the lifetime rights to the income therefrom." In its final order from which Ms. Cook has appealed, the court found that the "basic ownership of the account is in [appellees] and [Ms. Cook] shall have no ownership interest therein. [Ms. Cook] only has the right to receive the income therefrom." The original agreement between the parties provides that appellees are irrevocable beneficiaries of the account at Ms. Cook's death. It also specifically states that Ms. Cook "will have the use and benefit of any dividends and/or interest accruing on said account during her lifetime, thereby reserving the principal of the account." In our view, the circuit court's interpretation regarding the parties' relative ownership of the account is not clearly erroneous.

Because it found that Ms. Cook did not own the funds, but was entitled only to the income generated by the funds, the court determined that Ms. Cook had no independent right either to move the funds or to invest them. The court therefore found that her removal of the funds from the Scottrade account violated the parties' agreement. We hold that the trial court did not clearly err in this interpretation or

in its finding that Ms. Cook's actions constituted a breach of the contract.

## II. *Available Remedy*

■ Ms. Cook's next point on appeal is that, even if she breached the agreement, the circuit court erred by awarding injunctive relief in a contract case where money damages are ₇available. First, we disagree that money damages are available. Ms. Cook breached the contract by selling the investments and wiring the proceeds to an account in her name at her bank. The underlying purpose in awarding damages for breach of contract is to place the injured party in as good a position as he would have been in had the contract been performed. *Beardsley v. Pennino*, 19 Ark. App. 123, 127, 717 S.W.2d 825, 827–28 (1986). Although appellees own the principal of the account now, they do not receive the benefit of the principal until Ms. Cook's death. It would be impossible at this time to accurately measure the damages suffered by appellees due to Ms. Cook's breach because the precise date of her death, and thus the value of the particular number of shares of Wal–Mart and R.J. Reynold's stock on that date, is uncertain.

■ Second, in matters of equity, the court is one of conscience that should be ever diligent to grant relief against inequitable conduct, however ingenious or unique the form may be. *Beardsley*, 19 Ark. App. at 127, 717 S.W.2d at 828; *see also Montgomery County Canning Co. v. Bates*, 211 Ark. 930, 203 S.W.2d 195 (1947) (reversing and remanding dismissal in breach-of-contract case where remedy at law was inadequate, specific performance could not be required, but the complaint stated a good cause of action for injunctive relief). A court of equity may fashion any reasonable remedy justified by the proof. *Wesley v.*

*Estate of Bosley,* 81 Ark. App. 468, 478, 105 S.W.3d 389, 396 (2003).

In this case, the circuit court's remedy put the parties, as closely as possible, in the position they would have been in had Ms. Cook not breached the contract by selling the ⌐₈securities in the account and moving the funds. We hold that the court's findings on this point are not clearly erroneous or contrary to law, and we affirm its order.

Finally, Ms. Cook argues that we should reverse the court's award of attorney's fees if appellees are not the prevailing parties. Because we affirm the circuit court's order and appellees are the prevailing parties, we do not address Ms. Cook's argument.

Affirmed.

HART and ROBBINS, JJ., agree.