## ENTERPRISE SALES CO., INC. *v.* Joann BARHAM[1]

80-130                                        605 S.W. 2d 458
Supreme Court of Arkansas
Opinion delivered October 6, 1980

---

[1]Upon motion and suggestion of the death of Bob Barham, after this appeal had been docketed, Joann Barham was substituted as appellee herein.

*Clark & McNeil*, for appellant.

*Guy Jones, Jr.*, for appellee.

John A. Fogleman, Chief Justice. This is the second appeal in this case. On June 19, 1978, in an unpublished opinion, we affirmed a judgment against appellant on condition that appellee enter a remittitur of the amount of the judgment in excess of $1,500; otherwise, a new trial was ordered. No remittitur was entered. On retrial of this action by appellee against appellant, a building contractor, for damages allegedly resulting from appellant's failure to properly construct a house it sold appellee, the jury returned a verdict of $6,000 for appellee. We again find error in the proceedings.

Robert O. Barham, and his wife, Joann, entered into a contract to purchase a house from Enterprise Sales Company, Inc., after the latter had commenced construction. The purchase price was $32,000. Barham and his wife moved into the house on April 15, 1973. The subdivision in which the house was located was not on a city sewer system, so the house was served with a septic tank for sewage disposal. In August, 1973, the Barhams began having trouble with the septic tank system. After some efforts by Enterprise to alleviate the condition, the Barhams brought suit for damages against Enterprise, Lee Shock and The Action Company, Inc. The two corporations were family corporations owned by Lee Shock, his wife and their children. The Barhams alleged that the house was not completed in the manner agreed upon and that the nature of the soil where the house was located was unsuitable for a septic system. A verdict for Lee Shock and the Action Company was directed in the first trial.

Robert O. Barham testified as to the actual value of the house on April 15, 1973. At the conclusion of his testimony, appellant moved to strike that part of it relating to the value of the property in its condition when he moved into it. Denial of the motion was error. It is true that the opinion of the

owner is generally admissible on the question of value of the real estate, regardless of his knowledge of market values. *Arkansas State Highway Com'n v. Maus*, 245 Ark. 357, 432 S.W. 2d 478; *Arkansas State Highway Com'n v. Drennen*, 241 Ark. 94, 406 S.W. 2d 327; *Arkansas State Highway Com'n v. Fowler*, 240 Ark. 595, 401 S.W. 2d 1. That testimony must, however, be based upon facts that support his opinion. *Arkansas State Highway Com'n. v. Geeslin*, 247 Ark. 547, 446 S.W. 2d 245. Value cannot be based upon a figure plucked out of the air. *Arkansas State Highway Com'n. v. Stanley*, 234 Ark. 428, 353 S.W. 2d 173. A landowner's opinion testimony as to the value of his property is not substantial if it is shown that he has no satisfactory explanation for it. *Arkansas State Highway Com'n. v. Darr*, 246 Ark. 204, 437 S.W. 2d 463; *Arkansas State Highway Com'n. v. Duff*, 246 Ark. 922, 440 S.W. 2d 563; *Arkansas Stat Highway Com'n. v. Cook*, 257 Ark. 98, 514 S.W. 2d 215.

Barham expressed the opinion that the value of the property, due to its condition when he moved in, was "[s]ixteen to eighteen thousand dollars." He admitted that he had previously expressed the opinion that the property had been worth $21,000. When asked to explain the difference, he attributed it to the passage of time with the accompanying depreciation and the fact that the problem of which he had complained had existed for two, three or four years. Neither the passage of time nor depreciation was a factor of consideration of fixing the value of the property when the house was new.

Later Barham said that he had testified that the property had a value of sixteen, seventeen or eighteen thousand dollars, "somewhere along in there," "16, 17, 18 or 17, 18, 19, I don't recall but in that neighborhood." He then said that his opinion as to value was based upon his experience. He said his approach in fixing value was the going rate for building a house, saying that it was $6 or $8 per square foot for the garage, which contained 410 square feet, and $16 to $20 for the house itself, in which there were 1,815 to 1,820 square feet of heated space. He could not remember which figures he had used, but said that he had written them down on a piece of paper, which had probably been burned. Thus, the basic value could have been anywhere between $31,260

and $39,280. The most lucid explanation Barham gave for his reduction of the value was a consideration of his own "off-the-top-of-my-head estimate" of what it would cost him to put the house in a livable condition and what it would cost him to get on the city sewer system once it was available. The trial judge, after the motion to strike had been denied, admonished the jury to accept Barham's opinion with full knowledge of the fact that it was not based on a factual situation or any testimony the jury had heard. The Court's evaluation of the testimony should have been used as a basis for striking it, and an admonition to "accept it for what evidential value it may be to you, if any" was not a cure for the error.

If Barham's testimony is eliminated, there was no substantial evidence to support the verdict for a recovery of $6,000 which the jury returned. The trial judge refused to admit the proffered testimony of Frank Shaw, who had estimated the market value of the property, "with no sewage facilities available." The court sustained appellant's objection on the ground that the presumption that no septic tank was available was erroneous and without factual basis. We feel that there was evidence that there was, in effect, no workable septic tank. City sewer was not available and the question whether viable alternatives were available, was, to say the least, a disputed fact. Yet, the opinion of Shaw, a real estate broker, on the question of value was not included in the abstract of the proffer, and the jury did not consider his testimony, so we cannot in determining whether the evidentiary support for its verdict was substantial.

Appellee contends that appellant's arguments as to the trial court's refusal to strike the testimony of Barham and to the sufficiency of evidence to support the verdict are forclosed by the law of the case established by the first appeal, citing authorities holding that the rule makes the decision on the first appeal conclusive of any arguments that were or could have been made on that appeal. See, e.g., *Woodard* v. *Blythe*, 249 Ark. 793, 462 S.W. 2d 205. It is rather difficult to see how our holding on the first appeal that Barham failed to prove the amount of damages attributable to the defective septic tank, the sole basis upon which the case had been submitted to the jury, requires us to now hold that the evidence

presented on the second trial is sufficient. The rule might possibly have had some application on the matter of striking Mr. Barham's testimony if his testimony on retrial was the same as it had been on the first trial. It could not have been. Barham, as heretofore pointed out, gave a lower valuation to the property because of additional depreciation and the passage of time since the first trial. Obviously, the law of the case could not have any application here.

The court instructed the jury that, if the contract between the parties included a feasible and workable sewer system and if soil conditions prevented its installation, the verdict should be for the amount of the difference between the contract price and the fair market value of the property. Appellant contends that there was no competent evidence tending to show the sewer system could not be replaced or repaired and that there was no testimony to support a determination of fair market value. We have expressed our opinion on the latter question. But we do not agree that there was no evidence that soil conditions had prevented installation of a feasible and workable sewer system. Don Wood, formerly field inspector for the Arkansas Ecology and Pollution Control Commission, said that this was not a sewage disposal system that he would have approved in the vicinity where the Barham house was built in 1973. Wood said that he had told Lee Shock, the principal owner of appellant, before the house was built, that a septic tank would not work. He stated that he had the authority to override the action of any county health department. Jane Dunn, Faulkner County Sanitation Officer since August, 1975, testified that she did not know of any commercial aeration or leaching system that would have been acceptable for the Barham house in 1973. She said that she was not aware of any time when any alternate system would have been available, acceptable and approved for the Barham house. She said that the sand trap and aeration systems, both with chlorination, had been approvable alternatives to a septic tank system since 1974, when she was first employed by the Health Department, and that a sand filter system might have been approved as an alternative by the District Engineer, in August, 1974. She said that in April, 1977, she had written a letter to Barham stating that the only suitable alternative to the septic system was an aeration

system, chlorination unit and drainage through existing field lines with a possible relief line to a storm ditch for peak usage or for extremely wet weather. We cannot say that there was no substantial evidence that soil conditions had prevented the installation of a feasible and workable sewer system, even though there was testimony that alternative sewage disposal systems could have been installed.

Appellant says, however, that Barham was required to move reasonably to mitigate his damages, by installing a feasible and workable alternative sewage disposal system. The court did give an instruction that Barham had a duty to take such reasonable measures as might be necessary to mitigate or reduce his damages and that if it found that the system could have been repaired or replaced, Barham's damages would be fixed at an amount that would reasonably compensate him for doing so.

The only evidence abstracted that would give any indication of the cost of any alternative to the septic tank system, even assuming that an alternative was available in August 1973, when the trouble with the sewage disposal system first developed, was that of Lee Shock. He said that the cost of a sand trap system is about the same as a typical septic system. According to him, the cost of a regular septic system in 1973 was $600 and he thought the cost of a sand trap system would have been about $100 more, or $700.

The court's instruction was basically correct. See *Lisko* v. *Uhren*, 134 Ark. 430, 204 S.W. 101. This principle falls under the doctrine of avoidable consequences. Under this doctrine, one is required only to take such steps as may be taken at small expense or with reasonable exertion, and where the expense is so large as to make the requirement impractical, the doctrine has no application. Reasonable diligence and ordinary care are all that are required. *Lake Village Implement Company, Inc.* v. *Cox*, 252 Ark. 224, 478 S.W. 2d 36.

It seems to us, however, that the jury found that a workable alternative was not available when the damage occurred. At any rate, the question of reasonableness

of the expenditure or efforts to prevent the damage would ordinarily be a question for the jury.

Appellee sought to introduce the report of a percolation test performed by Billy P. Tyler on July, 15, 1974. The trial judge admitted this into evidence, over appellant's objection, upon a showing that the results of such tests were records required to be kept by Mrs. Dunn's office in the normal course of business. There was no error in the admission of this report over the very general objection made. Appellant now argues that the report was hearsay and not a business record in the sense of Ark. Stat. Ann. § 28-1001, Rule 803 (6) (Repl. 1979). But neither of these objections was made in the trial court. Error may not be predicated on a ruling admitting evidence in the absence of a specific ground of objection, if the specific ground was not apparent from the context. Ark. Stat. Ann. § 28-1001, Rule 103 (a) (1) (Repl. 1979). We cannot say that the ground appellant now argues was apparent in this case where the application of Rule 803 (6) could have been involved.

Appellant sought to cross-examine Barham about a $10,000 loan secured by a mortgage on the property he had obtained long after the alleged damage when there was an outstanding balance of $28,000 on the debt secured by a first mortgage. Appellant also sought to introduce documentary evidence to show these facts in order to contradict the testimony of Barham. In view of our treatment of the testimony of Barham, this question is not likely to arise on retrial.

Appellant also contends that the trial court erred in excluding estimony that Lee Shock made a bona fide offer to purchase the property from Barham for the same price that Barham paid for it, several months after his purchase. The trial judge excluded the testimony, ruling that the offer by Shock was, due to inflation, too remote in time and because the property might have had some "special meritorious value" to Barham that would justify his refusal of the offer. We think that this line of inquiry would have been proper in view of the fact that Barham had always contended that the property he purchased was worth not more than $21,000. The exact time

of Shock's offer was not disclosed by the abstract of the record, but it does not seem to have been too remote, in view of the fact that Barham had testified that the property had steadily depreciated in value. If the property had some special value to Barham that would have justified his refusal of Shock's offer, he would have had ample opportunity to explain.

Appellee argues that the question addressed to Barham and the anticipated testimony of Shock were properly excluded under Ark. Stat. Ann. § 28-1001, Rule 408 (Repl. 1979) because they constituted evidence of an offer to compromise. There was actually nothing to show that the offer was made as an attempt to compromise the dispute, or in compromise negotiations. The question which appellant addressed to Barham was admissible, not as evidence of an offer to compromise, but as tending to contradict his testimony and going to his credibility. See *Missouri Pac. Transportation Co.* v. *Norwood*, 192 Ark. 170, 90 S.W. 2d 480. See also, *McClintock* v. *Lankford*, 145 Ark. 254, 224 S.W. 488. A refusal of Shock's offer could certainly be taken as conduct inconsistent with his testimony. In this respect, it is somewhat different from an offer made by Barham or from a refusal by Shock to accept an offer by Barham. The question would definitely not have been permissible if it had been asked for the purpose of showing the value of the property. See *Arkansas Highway Com'n.* v. *Elliott*, 234 Ark. 619, 353 S.W. 2d 526.

On cross-appeal, appellee raises two questions. It is first argued that the trial court erred in striking appellee's claim for fraud and deceit. None of Barham's pleadings are abstracted by either party. We find no specific evidence, either proffered or excluded on this point, even though appellee did supplement appellant's abstract. At the conclusion of the evidence on behalf of Barham, the trial court granted a motion to strike all allegations of the complaint relating to fraud and deceit. On the record abstracted, we cannot say this was error. The law of the case does apply on this issue. No jury instruction pertaining to this issue was given in the first trial. The only instruction offered on the question of fraud was Barham's request for an instruction which would have permitted the allowance of punitive

damages if the jury found there had been fraud on the part of appellant. The propriety of the refusal of this instruction and the consequent elimination of the question of fraud was not raised by appellee on the first appeal.

We agree with appellant that on the record presented, the proffered testimony of Frank Shaw was admissible.

As we have pointed out there is evidence that a suitable substitute for the septic system could have been installed for $700 and appellant offered to confess judgment for that amount. There is testimony by Barham that it was, or would be, necesary for him to spend $914 for yard work and finishing work, $2.27 for repair of a distribution box, $16.48 for a relief line, $18.54 for a distribution box, $8.44 for four T-joints. $125.75 for unstopping the sewer, and $100 for digging a relief line and for topsoil, because of appellant's failure to properly perform the contract. These expenditures total $1,-085.48. If within 17 days appellee will enter a remittitur of the amount of the judgment in excess of $1,785.48, the judgment as so reduced, will be affirmed. Otherwise, a new trial will be ordered.

HICKMAN, J., would reverse and remand.