Cite as 2020 Ark. App. 336

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-19-644

| | |
|---|---|
| GREENWAY EQUIPMENT, INC., SUCCESSOR IN INTEREST TO BARTON AG CENTER, INC., AN ARKANSAS CORPORATION<br>        APPELLANT/CROSS-APPELLEE<br><br>V.<br><br>BOYCE JOHNSON<br>        APPELLEE/CROSS-APPELLANT | **Opinion Delivered:** June 3, 2020<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. 18CV-12-55]<br><br><br>HONORABLE RICHARD LUSBY, JUDGE<br><br>AFFIRMED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL |

## PHILLIP T. WHITEAKER, Judge

The appellant, Greenway Equipment, Inc., is a farm-equipment dealer. The appellee, Boyce Johnson, is a Crittenden County farmer. Johnson filed suit against Greenway in Crittenden County Circuit Court over the sale of a used tractor. Following a bench trial, the circuit court found that Greenway had breached an express warranty and entered a judgment against Greenway and in favor of Johnson. Both parties filed a notice of appeal from the judgment. We affirm on both direct and cross-appeal.

I. *Facts and Procedural History*

In December 2008, Johnson and Barton AG Center, Inc.,[1] by and through its employee, Gene Ward, began discussions and negotiations over the purchase of a tractor.[2] Johnson expressed an interest in purchasing a used, low-engine-hour[3] tractor. Ward advised Johnson that Barton would be taking delivery of several low-hour tractors in early 2009. Johnson advised Ward several times during their negotiations that he was only interested in low-hour tractors, and each time Ward reiterated that the trade-in tractors would have around 500 hours on them. The exact number of engine hours was unknown at the time because the tractors were not currently on the dealership lot.[4]

During the negotiations, Ward advised Johnson that Barton would be receiving a low-hours 2008 John Deere 8330 tractor that had the ability to operate an air seeder and a no-till drill. Johnson was particularly interested in the John Deere because of those features and its low hours. On December 30, Johnson agreed to buy the tractor for $142,500 and placed a $28,500 deposit on it. Ward created a customer purchase-order form for the John Deere. The form listed the specifications but did not indicate the number of engine hours.

---

[1]Barton was subsequently purchased by Appellant Greenway Equipment, Inc.

[2]These discussions occurred on three separate occasions over the course of a week, and the substance of these interactions are combined unless the timing is relevant to the issues at hand.

[3]Instead of an odometer tracking mileage on a motor vehicle, tractors utilize an hour meter to indicate the extent of use.

[4]Typically, farmers keep their trade-in tractors until their new tractors arrive; therefore, the trade-in tractors are not generally on the lot for inspection.

Johnson once again asked Ward about the hours on the tractor, and Ward specified that the tractor would have 500–550 hours on it. Johnson then wrote "500–600 hours" on the copy of the purchase order provided to him by Ward to ensure there was "no misunderstanding." Ward did not correct him.

In February 2009, Barton informed Johnson that the tractor had been received at the dealership. When Johnson inquired as to the actual number of hours on the tractor, he was informed that the tractor had 886 hours on it. Johnson refused to take possession of the tractor because the number of hours was significantly more than he expected. Barton and Johnson endeavored to settle the dispute but were unable to do so.

After settlement negotiations failed, Johnson attempted to find another tractor within his specifications to either buy or rent for the 2009 crop season. He was unsuccessful in purchasing another tractor that met his specifications. This forced him to change his intended method of preparing and planting his land, resulting in approximately 75 acres being left unplanted. Johnson was eventually able to rent a tractor from a local farmer but had to wait until this tractor became available. This delayed planting and resulted in a reduced crop yield for the 230 acres planted during the 2009 crop season.

In February 2012, Johnson filed suit against Greenway, the successor in interest to Barton, alleging breach of contract and breach of an express warranty. Johnson sought damages for lost profits on both the 75 unplanted acres and the diminished yield on the remaining 230 acres. He further sought damages for his expenses in connection with the tractor rental, for pre-irrigation and chemical expenses, for tractor repair, and for prejudgment interest. Greenway answered, denying the allegations and alleged that if a breach

had occurred, Johnson had failed to properly mitigate his damages. Greenway also responded that it was entitled to a credit against any damages award that Johnson might receive.[5]

The parties appeared at a bench trial in February 2019. After hearing all the evidence, the circuit court found that Ward's representations to Johnson created an express warranty and that the tractor delivered did not conform to that warranty. The court then awarded a judgment to Johnson in the amount of $96,600 representing the lost profits on the 230 acres of reduced yield. The court denied all other requests for damages from Johnson and denied Greenway's request for credit for the income tax savings Johnson received from depreciating the tractor. From this judgment, both parties appeal.

## II. *Analysis—Direct Appeal*

Greenway raises five points on appeal: (1) the circuit court erred in finding that Ward's statements created an express warranty with regard to the hours on the tractor; (2) the circuit court erred in finding that Johnson mitigated his damages; (3) the circuit court erred in awarding damages that were based on speculation and conjecture; (4) the circuit court erred in its refusal to reduce the damages award by Johnson's tax savings; and (5) the circuit court erred by refusing to admitting a prior inconsistent statement by Johnson.

Our standard of reviewing a judgment entered by a circuit court after a bench trial is well established. We do not reverse such a judgment unless we determine that the circuit court erred as a matter of law or we decide that its findings were clearly against the

---

[5]Johnson depreciated the purchase price of the John Deere tractor on his 2008 tax return, and Greenway contends that the income tax savings Johnson received should be credited to them.

preponderance of the evidence. Ark. R. Civ. P. 52(a) (2019); *Santifer v. Ark. Pulpwood Co.*, 66 Ark. App. 145, 991 S.W.2d 130 (1999).

## A. Express Warranties

Greenway first argues that the circuit court erred in finding that Ward's alleged representations created an express warranty regarding the number of hours logged on the tractor. The existence of an express warranty presents a mixed question of law and fact. *See Little Rock Sch. Dist. of Pulaski Cty. v. Celotex Corp.*, 264 Ark. 757, 765, 574 S.W.2d 669, 673 (1978), *on reh'g sub nom. Little Rock Sch. Dist. of Pulaski Cty. v. Matson, Inc.*, 264 Ark. 757, 576 S.W.2d 709 (1979) (noting that if the parties involved have assumed conflicting postures regarding the facts and circumstances, the issue or question is generally a question of fact; however, if there is no conflict in the evidence and only one reasonable inference can be drawn from the evidence, the issue becomes one of law). Thus, whether certain words were spoken or written presents a question of fact. Determining what those spoken or written words mean involves a question of law.

Regarding the express warranty, the circuit court made two substantial findings of fact. It found that Johnson had made clear to Greenway that he was only interested in tractors with "low hours" and that the number of hours was of particular importance to him. The circuit court also found that Ward had knowledge of Johnson's desire to purchase a low-hour tractor and had assured Johnson on several occasions that the tractor would have approximately 500–550 hours on it. We are not persuaded that either of these findings of fact are clearly erroneous. The court then concluded that these findings constituted an express warranty. We will now consider this question of law.

Arkansas Code Annotated section 4-2-313 is the statutory authority for express warranties created by a seller. Pursuant to this statute, a seller who makes any affirmation of fact or promise to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. *See* Ark. Code Ann. § 4-2-313(1)(a) (Repl. 2001); *Ciba-Geigy Corp. v. Alter*, 309 Ark. 426, 447, 834 S.W.2d 136, 146 (1992); *Currier v. Spencer*, 299 Ark. 182, 772 S.W.2d 309 (1989). Here, the circuit court found that Ward's repeated statements and assurances that the tractor would have approximately 500–550 hours on it were sufficient to form an express warranty and that it was not necessary for the statements regarding hours to be exact to constitute an affirmation of fact.

Greenway does not appear to dispute that Ward made the representations as alleged; rather, it claims that because the tractor was not in its possession when the representations were made, the representations were, at best, estimations or approximations of the number of hours logged on the tractor—not affirmations of fact. In other words, Greenway takes the position that the statements from Ward were nothing more than "sales talk."

In determining whether a statement is to be given effect as an express warranty or is to be regarded as merely a statement of opinion or sales talk, it is often necessary to read the statement in the context of the entire discussion or contracting process. 3 Anderson U.C.C. § 2-313:76 (3d ed. 2009). Further, in determining whether a contract creates a warranty, the focus is not on any particular language at a particular point in time but on whether the seller's actions or language, when viewed in light of the seller's relationship with the buyer, were fairly regarded as part of the contract to purchase the good. 67A Am. Jur. 2d *Sales* § 628,

Westlaw (database updated May 2020). Moreover, whether Ward's statements and assurances constituted a part of the contract or just "sales talk" was a matter of the court's weighing of the evidence and determination of credibility. Disputed facts and determination of witness credibility are within the province of the judge, sitting as the trier of fact. *Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998). We are not persuaded that Ward's statements were just "sales talk" or that the circuit court clearly erred in concluding that these statements were an affirmation of fact sufficient to create an express warranty.

Still, Greenway argues that Johnson fully understood that the exact number of hours was unknown when he entered into the contract; therefore, he knew or should have known that the number of hours was not an express guaranty. The circuit court disagreed, placing the greater weight of the evidence on Ward's knowledge that Johnson was interested in purchasing a low-hour tractor and on Ward's advice that a particular tractor with an expected number of hours in the low 500 to 550-hour range would be available for sale. On the basis of Ward's representations, Johnson placed a deposit on the tractor. Thus, it seems plain enough that Ward's statements that the tractor would have "low hours" in the 500 to 550-hour range was an affirmation of fact having a natural tendency to induce Johnson to purchase it. As such, the circuit court did not clearly err in finding that an express warranty had been created.

### B. Damages

Greenway next argues that the circuit court erred in its award of damages. It asserts that Johnson failed to mitigate his damages; that the damages award was based on speculation

and conjecture; and that the damages award should have been reduced by Johnson's tax savings. We disagree.

### 1. *Mitigation of damages*

Greenway first argues that because Johnson failed to mitigate his damages, he was not entitled to recover consequential damages. Arkansas recognizes the doctrine of avoidable consequences. Under this doctrine, a party cannot recover damages resulting from consequences that he or she could have reasonably avoided by reasonable care, effort, or expenditure. *Bill C. Harris Constr. Co. v. Powers*, 262 Ark. 96, 554 S.W.2d 332 (1977); *Taylor v. George*, 92 Ark. App. 264, 273, 212 S.W.3d 17, 24 (2005); *Quality Truck Equip. Co. v. Layman*, 51 Ark. App. 195, 912 S.W.2d 18 (1995).

Greenway claims that Johnson had several months in which to find a replacement tractor by purchase, rental, or some other arrangement and did not do so. Greenway further argues that Johnson could have (1) purchased the subject tractor and sued for any diminished value based on the additional hours of use; (2) rented the subject tractor for the planting season and sued for the cost of the rental; or (3) attempted to rent or purchase a tractor from Barton or a neighboring dealership.

Admittedly, Greenway presented evidence at trial that several tractors were available at nearby dealerships for purchase and/or rent during that time period, yet Johnson waited until June to secure a rental tractor. In response, Johnson presented evidence that he contacted another dealership with five or six stores and contacted multiple farmers in the area that he knew bought, sold, or rented tractors in his efforts to find a comparable tractor to allow him to utilize the no-till method of planting. His efforts were unsuccessful, and he

8

determined that the best option available was to rent from another farmer after that farmer was done with his own planting. Because of the delay, Johnson was unable to utilize the no-till method of planting and was forced to utilize a more time-consuming process at a significantly later time in the season.

After reviewing the evidence regarding the parties' attempts to resolve their dispute, the circuit court acknowledged that the efforts suggested by Greenway might have further mitigated the damages but noted that a buyer who rightfully rejects goods need not exhaust every possibility or succeed in mitigation efforts. Instead, the circuit court noted that all that is required is that the buyer's efforts at mitigation be reasonable. The circuit court found Johnson's mitigation efforts were reasonable.

We find no error in the circuit court's analysis. One is required only to take such steps as may be taken at small expense or with reasonable exertion, and where the expense is so large as to make the requirement impractical, the doctrine of avoidable consequences has no application. *Enter. Sales Co. v. Barham*, 270 Ark. 544, 605 S.W.2d 458 (1980). Reasonable diligence and ordinary care are all that are required. *Id.* The burden of proving that a nonbreaching party could have avoided some or all of the damages by acting prudently rests on the breaching party, not only on the question of causation of damages for failure to avoid harmful consequences, but also on the question of the amount of damage that might have been avoided. *See Bill C. Harris Constr. Co.*, *supra.* In most cases, whether one acted reasonably in minimizing, mitigating, or avoiding damages is a question of fact. *Id.*; *Quality Truck Equip. Co.*, *supra.*

Here, the circuit court recognized that there may have been other options available to Johnson if he had broadened his search but concluded that inaction on such options did not necessarily constitute a failure to mitigate his damages. The circuit court reviewed and weighed the evidence presented on mitigation and found Johnson's efforts reasonable. That finding is an issue of fact for the circuit court to decide, and we cannot say that the circuit court's finding was clearly erroneous under these facts.

2. *Damages based on speculation and conjecture*

Greenway next argues that the circuit court's award of damages for reduction of yield was clearly erroneous as the damages were speculative. In support of its argument, Greenway claims that Johnson's crop-insurance report and Johnson's own testimony demonstrate that crop yields and sales prices are affected by weather, weeds, market price and "a host of other variables." Greenway asserts that because the yield and price of soybeans varies greatly from year to year, any calculation of damages would be the result of speculation and conjecture.

In general, damages recoverable for breach of contract are those damages that would place the injured party in the same position as if the contract had not been breached. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999). Damages must arise from the wrongful acts of the breaching party. *Id.* Moreover, the judgment must have some relationship to the damages proved. *Id.* Consequential damages are defined as "[s]uch damage, loss or injury as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 604–05, 864 S.W.2d 817, 825 (1993) (quoting *First Serv. Corp. v. Schumacher*, 16 Ark. App. 282, 702 S.W.2d 412 (1985)).

10

Here, the circuit court awarded damages for lost profits. Lost profits are recognized as a type of consequential damages, *Dawson*, 337 Ark. at 258, 987 S.W.2d at 728, in that they do not flow directly and immediately from a breach of a contract, but flow from some consequence or result of the breach. *See Smith*, *supra*. A party seeking recovery of anticipated profits must present a reasonably complete set of figures to the fact-finder and should not leave it to speculate as to whether there could have been any profits. *See Interstate Oil & Supply Co. v. Troutman Oil Co.*, 334 Ark. 1, 972 S.W.2d 941 (1998). Instead, lost profits must be proved by evidence showing that it was reasonably certain the profits would have been made had the other party carried out its duties under the contract. *Id*. Such proof is speculative when based on projected sales if there are too many variables to make an accurate projection. *Id*. However, if it is reasonably certain that profits would have resulted had the contract been carried out, then the complaining party is entitled to recover. *Id*.; *Jim Halsey Co. v. Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). Proof of an established business's past profits is sufficient proof of its lost future profits. *See Mine Creek Contractors, Inc. v. Grandstaff*, 300 Ark. 516, 780 S.W.2d 543 (1989). Lost net profits, not lost gross profits, are recoverable. *See Interstate Oil & Supply Co.*, *supra*. Although recovery will not be denied merely because the amount of damages is hard to determine, damages must not be left to speculation and conjecture. *Dawson*, *supra*.

Utilizing these principles, the circuit court refused to award Johnson lost profits on the 75 acres that were not planted, finding that there was insufficient evidence as to the likely cost for obtaining a harvest from those acres. The court did, however, award Johnson lost profits on the diminished yield on the 230 irrigated acres that were planted.

At trial, Johnson testified that he experienced a diminished yield of 37 bushels per acre on 230 acres. He opined that 2009 would have been a banner year for yield if he had planted by the June 15 target date. He testified that had the target date been met, the property would likely have produced 77 bushels per acre. Because he could not obtain use of a rental tractor until late-June and July, he missed the optimum planting time in the spring. He calculated his damage at 40 bushels per acre at a price of $14 per bushel. The circuit court, however, found that Johnson's potential yield if no breach had occurred would have been 67 bushels per acre based on a crop-insurance report showing Johnson's crop yields since the year 2000. The circuit court awarded Johnson $96,600 in lost profits.[6] On these facts, we are satisfied that the circuit court did not clearly err in assessing lost-profit damages.

### 3. *Effect of tax savings on award of damages*

Greenway also argues that Johnson's award should be reduced by $47,955—the tax savings Johnson received as a result of depreciating the entire price of the tractor in 2008. Greenway argues that Arkansas Code Annotated section 4-2-713 provides that a buyer's damages should be reduced to the extent of any "expenses saved in consequence of the seller's breach." Greenway contends that because Johnson received a significant tax savings as a result of the sales contract that he ultimately canceled, any damages awarded to him should have been reduced by the corresponding tax savings.

Admittedly, Johnson elected to take a section 179 tax deduction for the entire purchase price of the tractor on his 2008 tax returns but then never completed the sale;

---

[6]The damages amount was calculated by multiplying 30 bushels per acre at $14 per bushel by 230 acres.

12

therefore, his 2008 tax return is likely in error and may need to be amended. This seems to be a tax matter between Johnson and the Internal Revenue Service. Greenway, however, took the position with the circuit court, and here on appeal, that this tax matter is an issue of statutory expenses. Despite its argument, Greenway did not provide the circuit court with any expert testimony on this issue, and the circuit court was correct in refusing to include the deduction in the calculation of the damages award.

## C. Prior Inconsistent Statement/Settlement Letter

Finally, Greenway argues the circuit court erred when it refused to admit into evidence as a prior inconsistent statement a letter in which Johnson[7] asserted an $11-per–bushel price as opposed to the $14 per bushel price he testified to at trial. The circuit court held that the statement was made pursuant to settlement negotiations and therefore was not admissible pursuant to Rule 408 of the Arkansas Rules of Evidence.

Rule 408 provides:

> Evidence of (1) furnishing, offering, or promising to furnish, or (2) accepting, offering, or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion if the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

---

[7]It should be noted that there was evidence that the letter was drafted by Johnson's attorney on his behalf. However, it is on Johnson's letterhead and Johnson's name appears on the signature line.

Ark. R. Evid. 408. However, Rule 408 is not a blanket prohibition against the admission of all evidence concerning offers to compromise. *McKenzie v. Tom Gibson Ford, Inc.*, 295 Ark. 326, 749 S.W.2d 653 (1988). Rather, the rule prohibits the introduction of such evidence when the evidence is offered to prove "liability for, invalidity of, or amount of the claim or any other claim." *Id.* at 332–33, 749 S.W.2d at 657 (quoting Ark. R. Evid. 408).

Greenway argues that the purpose of Rule 408 is to promote complete candor between the parties to the settlement negotiations but not to protect false representations. We agree with this assertion. When a party has made a statement at trial that is inconsistent with a statement made during settlement negotiations, the inference is that one of the statements is knowingly false. In such a situation, prior inconsistent statements made in the course of settlement negotiations should be admitted for impeachment purposes. *Mo. Pac. R.R. Co. v. Ark. Sheriff's Boys' Ranch*, 280 Ark. 53, 64, 655 S.W.2d 389, 395 (1983).

Here, Greenway was attempting to introduce the letter to prove Johnson had at one time claimed damages in an amount less than that claimed at trial. However, the statement Greenway sought to introduce was made during Johnson's attempt to settle a disputed claim. Thus, it falls directly within the purview of the type of evidence prohibited by Rule 408. Moreover, a circuit court has wide discretion in evidentiary determinations. *Wakefield v. Bell*, 2018 Ark. App. 120, at 3, 542 S.W.3d 908, 910. Such evidentiary rulings are within the sound discretion of the circuit court and will not be set aside by this court absent a manifest abuse of that discretion. *Id.* Neither will we reverse on an evidentiary ruling absent a showing of prejudice. *Id.* at 3–4, 542 S.W.3d at 911. As a result, the circuit court did not abuse its discretion in denying the admission of the letter.

## III. *Analysis—Cross-Appeal*

In his brief submitted to our court, Johnson contends that his request for additional damages and prejudgment interest was erroneously denied by the circuit court. We cannot reach the merits of his cross-appeal, however, because although Johnson did file a notice of cross-appeal, he did not properly file a cross-appellant's brief. First, he did not file either a jurisdictional or an informational statement as required by Arkansas Supreme Court Rule 1-2(c); and instead of separately designating and setting forth his arguments on cross-appeal, he merely presented his arguments in response to Greenway's arguments on direct appeal.

Our supreme court has dealt with a similar scenario. In *Hall v. Freeman*, 327 Ark. 720, 942 S.W.2d 230 (1997), appellee Freeman filed a notice of cross-appeal and filed a brief in response to appellant's brief on appeal. Freeman did not include separate arguments in support of his cross-appeal in his brief. The supreme court held that because Freeman did not include a section in his brief setting forth his arguments on cross-appeal, he had in effect presented no cross-appeal even though he had advanced similar arguments in his brief in response to appellant's argument. In short, the supreme court concluded that when the appellee is also the cross-appellant, a separate argument must be presented in its brief in order to present a cross-appeal. In other words, making an argument reflecting the substance of the cross-appeal in response to appellant's argument simply is not enough to present the argument for appellate review.

We subsequently relied on *Hall* when affirming another similar case—*Rheem Manufacturing, Inc. v. Bark*, 97 Ark. App. 224, 228, 245 S.W.3d 716, 719 (2006). In *Rheem Manufacturing*, the appellee Bark argued on appeal that the Commission had erred in

calculating his average weekly wage. We noted that while Bark had filed a notice of cross-appeal, he had not filed a brief separately setting forth his arguments in support of his cross-appeal. Instead, he had made his argument in response to appellant Rheem's arguments on direct appeal. Considering the reasoning of the *Hall* decision, we refused to reach the merits of Bark's argument.

The same holds true here. Johnson failed to separately set forth his arguments on cross-appeal, instead interspersing his arguments within his response to Greenway's arguments on direct appeal. He further failed to follow the requirements of Supreme Court Rule 1-2(c) regarding the filing of jurisdictional and informational statements, and he failed to formally designate his brief as a cross-appellant's brief. For these reasons, we decline to address the merits of Johnson's arguments.

Affirmed on direct appeal; affirmed on cross-appeal.

KLAPPENBACH and VAUGHT, JJ., agree.

*Hardin, Jesson & Terry, PLC*, by: *Jeffrey W. Hatfield*, *Kynda Almefty*, *Carol Ricketts*, and *Kirkman T. Dougherty*, for appellants.

*Gerald A. Coleman*, for appellee.