

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–15–474

| | | |
|---|---|---|
| JASON BURR | | **Opinion Delivered** November 12, 2015 |
| | APPELLANT | |
| V. | | APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. DR–12–73] |
| ALISHA GAIL BURR | | HONORABLE JERRY RYAN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Jason Burr appeals the Polk County Circuit Court's order that awarded primary custody of the parties' children to Alisha Burr. On appeal, Jason argues that the circuit court erred when it did not grant custody to him. We affirm.

Jason and Alisha were married on November 6, 2004. On May 11, 2012, Jason filed a complaint for divorce against Alisha and sought custody of their two children, E.B. and J.B. On May 30, 2012, Alisha filed an answer and a counterclaim for divorce. She also sought custody of the children.

On September 10, 2012, following a hearing, the court awarded temporary custody to Alisha and visitation rights to Jason. Specifically, the court ordered that Jason have visitation with the children every other weekend from Thursday at 10:00 a.m. to Sunday at 5:00 p.m. and that Jason have nightly phone visitation at 7:00 p.m. The court further ordered Jason to pay $2,800 per month in child support to Alisha.

SLIP OPINION

On October 22, 2012, the court ordered that the parties and E.B. attend therapy with Pat Howard, a family counselor. The court further ordered that Alisha cooperate with Jason concerning the counseling.

On November 6, 2012, Alisha filed an ex parte petition to suspend Jason's visitation. The petition stated that Howard had recommended that E.B. have a thirty-day reprieve from visiting Jason because E.B. had conveyed to her that he "doesn't want to go to his dad's (Jason's) house because it makes him lonely" and that "daddy (Jason) says bad things about mama (Alisha)." On that same day, the court granted Alisha's petition and suspended Jason's visitation for thirty days. On December 18, 2012, Jason filed an emergency motion to reinstate his visitation, and on December 20, 2012, the court granted the motion.

In September 2013, the State charged Alisha with aggravated assault, criminal mischief, and arson. In response to the charges, Jason filed a motion for emergency relief and an expedited final hearing. The court set a hearing for December 16, 2013.

At the hearing, Alisha testified that she rents a nice, 2000-square-foot mobile home from her parents. She stated that she was unemployed and had no income. She explained that she previously worked at Glenwood Nursing and Rehab but had to take a leave of absence due to her pending criminal charges. She noted that she had completed her registered-nursing degree and hoped to work as a nurse once she settled her legal issues. She stated that if Jason stopped paying her child support, she would not be able to pay her bills. She noted that she married Jason when she was eighteen years old and he was thirty-two years old and that he financially provided for the family during the marriage.

SLIP OPINION

Alisha stated that the temporary visitation with Jason had been going well and that she and Jason had effectively communicated about the children's activities. She testified that the children appeared happy. She further noted that E.B. was doing well in school and that J.B. stayed at home with her. She testified that she went to counseling with Howard, but Howard attempted to discuss the criminal charges, and she informed Howard that she could not talk about the charges. She discussed the temporary suspension of Jason's visitation with E.B. and noted that E.B. is now happy to visit Jason. Alisha stated that she had been dating Shane Medlin and that he had spent the night at her home when the children were present, but they did nothing inappropriate in front of them. She testified that she had consumed alcohol around the children, but she had not been intoxicated in their presence.

Howard testified that Jason had been very cooperative during counseling sessions with the children but that Alisha had attended only one session. She noted that she had concerns with the children remaining in Alisha's custody because of the pending criminal charges. She stated that E.B. does not converse much during the sessions and that E.B. had said that his mother told him not to talk. E.B. also told Howard that Alisha told him not to give out his phone number so that his dad could not call him. She discussed the one session that Alisha attended where Alisha became agitated with her. She testified that she was not trying to discuss Alisha's criminal charges but wanted to know only the nature of the crimes. She stated that Jason had asked her for help in securing custody of his children in October 2013 and noted that, during the initial sessions, she was attempting to mend Jason and E.B.'s relationship because Jason felt that it had deteriorated. She also noted that, during the initial

3

SLIP OPINION

sessions, Jason expressed anger toward Alisha, but those feelings had subsided.

Jason testified that he rents a three-bedroom house in Mena and that E.B. and J.B. have their own rooms there. He noted that he also has two older children ages eighteen and sixteen from a previous marriage. He stated that the older children visit occasionally, but they do not babysit E.B. and J.B. and they sleep on the couch when they spend the night. He stated that he works for Windows USA and that he travels every other week. He stated that, if the court awarded him custody, he would not travel anymore and that he would hire a babysitter to care for the children while he worked in town during the day.

Jason explained that Alisha had accused him of being in a romantic relationship with the woman who was the victim of Alisha's arson charges. He noted that the children were with him on the weekend that the fire occurred. He also noted that he had problems with Alisha's phone number and that, in September, Alisha would not let him speak with the children over the phone for a period of ten days. He asked the court to give him custody of the children because he was concerned about the criminal charges against Alisha. He also voiced concerns about the children spending the night at Alisha's boyfriend's house and being around Alisha's sister.

> At the conclusion of the hearing, the court stated that it found
>
> it very encouraging that both of you seem to have adjusted considerably from when we were here some time ago and everybody's feelings and emotions were on edge and no one was happy. I think both of you recognize that you have to do this for the kids regardless of what you think about each other. The kids need parents who treat each other with respect in the presence of the children and around them. And, you have both done that and I really commend you for doing that.

Instead of ruling on the child-custody issue, the court took the matter under advisement

pending the outcome of Alisha's criminal charges. The court ordered that the temporary-visitation schedule continue—specifically, that Alisha have custody of the children and that Jason have visitation every other weekend from Thursday at 10:00 a.m. through Sunday at 5:00 p.m. and nightly phone visitation at 7:00 p.m. The court further ordered that once a month Jason would have the children Thursday through Monday morning. The court noted that it modified the temporary-visitation schedule and awarded Jason an additional night a month because it was "convinced that both parents need significant time with the children." The court also ordered that the parties continue counseling with Howard and noted that Howard should respect Alisha's inability to discuss the pending criminal charges.

On February 12, 2014, the court entered a divorce decree granting the parties a divorce and ordering the parties to follow the temporary visitation schedule until the court entered a supplemental order.

On September 3, 2014, the court issued a letter to the parties noting that it had delayed issuing a supplemental order until after Alisha's sentencing on the criminal charges. The letter further stated that the court saw no reason for a follow-up hearing on the custody-and-visitation issues and that it planned to make the temporary-visitation schedule permanent upon the entry of a supplemental order.

On February 10, 2015, the court entered a supplemental order[1] making the temporary-

---

[1] Judge J.W. Looney presided over the preliminary proceedings and the hearings and issued the divorce decree and the September 3, 2014 letter; however, Judge Looney retired on December 31, 2014, and Judge Jerry Ryan entered the supplemental order in accordance with Judge Looney's notes and directions.

visitation schedule permanent and awarding Alisha custody of the children.[2] The court further ordered that Jason continue to pay Alisha $2,800 per month in child support. The court took judicial notice that, since the divorce hearing, Alisha had pled no contest to arson, three counts of aggravated assault, and criminal mischief and that she was currently spending weekends in jail and had been ordered to pay fines, costs, and restitution. Following the entry of the supplemental order, Jason filed this timely appeal. On appeal, Jason argues that the circuit court erred in awarding custody of the children to Alisha.

In custody matters, this court considers the evidence de novo and does not reverse unless the circuit court's findings of fact are clearly erroneous. *Chaffin v. Chaffin*, 2011 Ark. App. 293. A finding is clearly erroneous when, although there is evidence to support it, the court is left with a definite and firm conviction that the circuit court made a mistake. *Id*. Due deference is given to the circuit court's superior position to judge the credibility of the witnesses. *Id*. Our supreme court has held that there is no other case in which the superior position, ability, and opportunity of the circuit court to observe the parties carries a greater weight than one involving the custody of minor children. *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). The best interest of the children is the polestar in every child-custody case; all other considerations are secondary. *Id*. Factors a circuit court may consider in determining what is in the best interest of the child include the psychological relationship between the parents and the child, the need for stability and continuity in the child's

---

[2] The supplemental order also divided the parties' marital debt. The division of the marital debt is not an issue on appeal.

relationship with parents and siblings, the past conduct of the parents toward the child, and the reasonable preference of a child. *Rector v. Rector*, 58 Ark. App. 132, 947 S.W.2d 389 (1997).

In this case, Jason argues that the circuit court erred in awarding Alisha custody of the children because of Alisha's questionable moral character and unstable lifestyle. Jason points out that Alisha has criminal convictions of arson, aggravated assault, and criminal mischief and is currently serving jail time on the weekends.[3]

We hold that the circuit court did not clearly err when it ordered that the temporary-visitation schedule become permanent and awarded Alisha custody of the children. The record demonstrates that the parties had been following the temporary visitation schedule since 2012, that the schedule had been working well for the parties, that E.B. had been doing well in school, that J.B. had been staying at home with Alisha during the day, and that the children appeared happy. Although Alisha pled no contest to the felony charges, the record provides us with little information concerning the nature of the charges or the factual background; thus, it is unclear to us what bearing the charges have on Alisha's capacity to care for the children. We further note that the same circuit court judge presided over the divorce proceedings and Alisha's criminal proceedings, and we recognize his superior position to observe the parties and judge their credibility in matters relating to child custody.

---

[3] In her response, Alisha asserts that this appeal is moot because Jason filed a petition for an emergency change of custody on April 7, 2014, and the circuit court dismissed the petition. We do not agree. Jason's petition is not in the record before us, and this court does not consider matters outside the record. *See Cox v. State*, 2015 Ark. App. 462. Furthermore, the fact that the circuit court dismissed Jason's petition for change of custody does not render moot his appeal of the circuit court's initial custody determination.

SLIP OPINION



Accordingly, given our deference to the circuit court's position, we cannot say that its decision was clearly erroneous.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Michael Hamby, P.A.*, by: *Michael Hamby*, for appellant.

*Janie M. Evins*, for appellee.