DAVID M. GLOVER, Judge
Nate Wakefield and Angela Bell are the parents of R.W., who was born on November 26, 2014. Nate and Angela lived together with R.W. and K.W., Nate's other child of whom he has custody, until around the end of March 2015 when Angela took R.W. and moved in with her mother. On April 10, 2015, Nate filed a verified petition for paternity testing and petition for custody. Angela did not challenge Nate's paternity. Temporary custody of R.W. was awarded to Angela following a hearing on May 29, 2015. On January 25, 2016, the full custody hearing began, and then resumed and concluded on July 26, 2016. Child-abuse allegations were raised in the proceedings. By order entered December 21, 2016, the trial court awarded custody of R.W. to Angela, finding it was in R.W.'s *910 best interest to do so, and also specifically finding that Angela "has not been battering the minor child." Nate received fairly standard visitation and was ordered to pay child support of $268 a month. Nate appeals from the December 21 order, raising three basic points, which have several subpoints: 1) the trial court erred in allowing expert testimony; 2) the trial court erred "in excluding photographic evidence depicting injuries and included medical records"; and 3) the trial court erred in determining that it was in the best interest of R.W. to be placed in the physical custody of Angela. We affirm.
For his first point of appeal, Nate contends the trial court erred in allowing the expert testimony of Carrie Rye. In making this argument, he asserts that the testimony should have been excluded because 1) it was not helpful to the fact-finder, 2) the proper foundation was not laid, 3) any probative value was substantially outweighed by unfair prejudice, and 4) Rye gave opinions outside of her qualifications as to how the court should rule. We find no abuse of discretion.
Carrie Rye, the expert witness, has a bachelor's degree in psychology and a PhD in education. Briefly, the aspects of her testimony Nate found objectionable involved the fact that she had never met Nate or been to his house, she had a total of seven sessions with Angela, the only information she had was what Angela had described to her about the child's conduct upon returning from a visit with Nate, and she was not familiar with the best-interest standard in Arkansas. Rye gave her professional opinion that Angela was not being abusive to R.W.; that being away from Angela was stressful to the child and that "based on best practice, developmental issues, and temperament, I think one week at a time would be very distressful [sic] for [R.W.]"; that it was traumatic for a child of R.W.'s age to be placed in foster care with a stranger; and that she had no indication it would be in R.W.'s best interest to be taken from Angela and placed in foster care. As indicated by the trial court's response, "Is someone threatening to do that?," a fear of foster-care proceedings, rather than the reality of same, prompted at least some of the testimony.
In reviewing the trial court's handling of this witness's testimony, it is important to note the matter was being tried to the court. In responding to Nate's objections to many aspects of Rye's testimony, the trial court directed the witness to be specific to the case at hand, it noted that the objections would go to the weight of the testimony, and the trial court expressed its understanding that Rye had not interviewed Nate. We find no basis for reversal under this point. Arkansas Rule of Evidence 702 provides:
If scientific, technical, or otherwise specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
We note Nate raised no initial objections to Rye's qualifications as an expert. Rather, that type of challenge emerged when Rye offered her opinion about visitation, i.e. , Nate argued that she could offer expertise as an educator but not about visitation, and, similarly, that she acknowledged she did not know the Arkansas best-interest standard. However, her initial recitation of her qualifications included a B.S. degree in psychology, and no objection was raised to that portion of her expertise.
In evidentiary determinations, a trial court has wide discretion. Donley v. Donley , 2016 Ark. 243, 493 S.W.3d 762. On appeal, we will not reverse a trial court's *911 ruling on the admissibility of evidence absent an abuse of discretion. Id. Neither will we reverse on an evidentiary ruling absent a showing of prejudice. Oliver v. State , 2016 Ark. App. 332, 498 S.W.3d 320.
Here, throughout Rye's testimony, the trial court demonstrated a thorough understanding of the challenges to the testimony and how the trial court intended to assess the testimony in light of those challenges. For example, the trial court noted the objections would go to the weight of the evidence and recognized Rye had never met with Nate. If this had been a jury trial, Nate's challenges might have carried more weight, but this was a bench trial. The trial court made it abundantly clear it understood how to assess Rye's testimony and that it was not unduly influenced by it. We find no abuse of discretion in the trial court's overruling of Nate's objections. Moreover, even though joint custody was not granted, the trial court's decision to reject that custody arrangement was based more on the parties' inability to get along than any testimony from Carrie Rye, and Nate was awarded fairly standard visitation. Consequently, even if we had concluded there was an abuse of discretion, which we do not, we would find no resulting prejudice. Finally, we do not address Nate's arguments related to a Rule 403 balancing of prejudice versus probative value because it is being raised for the first time on appeal. A party is bound by the scope of his or her arguments made to the trial court, and we will not address arguments raised for the first time on appeal. Sills v. Arkansas Dep't of Human Servs. , 2018 Ark. App. 9, 538 S.W.3d 249.
For his second point of appeal, Nate contends the trial court "erred in excluding photographic evidence depicting injuries and its included medical records." To the extent this argument was preserved, we disagree.
The following colloquy occurred at the beginning of the custody hearing when it resumed on July 26, 2016:
MR. MOON : We have a zip drive with numerous photographs and the originals in those boxes. I provided this zip drive to Ms. Virnig a couple of weeks ago.
MS. VIRNIG : We agree to stipulate that can be admitted.
MR. MOON : It will be Joint Exhibit 1. It is a zip drive containing photographs of the child.
THE COURT : Okay. Are they all relevant?
MS. VIRNIG : There are probably hundreds.
THE COURT : No, we do not need that if we have twenty-five we are going to testify about. That will be fine.
MR. MOON : I am going to proffer this into the record in case of an appeal.
THE COURT : You may proffer it.
(Emphasis added.) Initially, the trial court was clearly amenable to allowing the evidence as a joint exhibit, but when the court asked, "Are they all relevant," the only response came from Angela's counsel, who stated, "There are probably hundreds." Nate's counsel did not add anything to that response. The trial court then ruled, "No, we do not need that if we have twenty-five we are going to testify about. That will be fine." We find no abuse of discretion in this ruling.
Although the parties stipulated to the admission of the zip-drive exhibit containing "hundreds" of photographs, the stipulation did not include explanations putting the hundreds of photographs in context, e.g., when they were taken, under what circumstances, and by whom. Moreover, the only testimony relied upon by Nate in his appellate arguments regarding the "included medical reports" came from his father, *912 Travis Wakefield, who has no medical expertise nor record-keeping responsibilities concerning the medical records. In fact, the testimony from appellant's father regarding the medical records, and relied upon by Nate in arguing this issue, consisted of the following: "The medical records on that disc show that he [R.W.] had contusions, bruises and things like that." Further, as noted by the trial court, several photographs were admitted that purportedly showed abusive marks on R.W.'s body, and those photographs were accompanied by explanatory testimony. Although Nate attempts to do so in his arguments to this court, at trial neither party provided explanations regarding why the proffered exhibit would offer different or more helpful evidence. Nor was there any testimony explaining the context of the proffered photographs and medical evidence. Even the very limited testimony from Travis Wakefield that Nate quotes in his argument to us did not provide any context. Consequently, to the extent Nate asks us to address expanded arguments under this point that were not presented to the trial court, we decline to do so because they were not properly preserved for our review. With respect to the information and arguments actually presented to the trial court concerning this proffered zip drive, we find no abuse of discretion in the refusal to admit it as evidence. Without more explanation from either counsel, the trial court's ruling was perfectly rational because the trial court had sufficient evidence before it on the abuse issue and did not need the addition of "hundreds" of unexplained photographs and "included medical records."
For his final point of appeal, Nate contends the trial court erred in determining it was in R.W.'s best interest to be placed in Angela's physical custody. As subpoints, he contends a trial court "should be aware of all facts at the time of the custody decision, and here that cannot be said to have occurred due to rejection of evidence in the proffered joint exhibit," and "should consider financial stability in a custody award, and here, Angela lacked an ability to support herself and relied upon others." We find no basis for reversal of the trial court's custody decision.
In child-custody matters, we consider the evidence de novo, and we will not reverse unless the trial court's findings of fact are clearly erroneous. Burr v. Burr , 2015 Ark. App. 640, 476 S.W.3d 195. A finding is clearly erroneous when, although there is evidence to support it, our court is left with a definite and firm conviction that the trial court made a mistake. Id. We give due deference to the trial court's superior position to judge the credibility of witnesses, recognizing that there is no other case in which the superior position, ability, and opportunity of the trial court to observe the parties carries a greater weight than one involving the custody of minor children. Id. The best interest of the child is the polestar in every child-custody case; all other considerations are secondary. Id. Factors a trial court may consider in determining what is in the best interest of the child include the psychological relationship between the parents and the child, the need for stability and continuity in the child's relationship with parents and siblings, the past conduct of the parents toward the child, and the reasonable preference of a child. Id.
In addressing Nate's specific challenges under this point, we reject his first subpoint, i.e., that a trial court "should be aware of all facts at the time of the custody decision, and here that cannot be said to have occurred due to rejection of evidence in the proffered joint exhibit," because we have earlier determined the trial court did not abuse its discretion in denying *913 the introduction of the zip drive containing additional photographs and medical information. We also reject his second subpoint, i.e., that a trial court "should consider financial stability in a custody award, and here, Angela lacked an ability to support herself and relied upon others." Angela was living with her mother, working, and going to school. Nate, on the other hand, received financial assistance from a family trust fund and worked some part-time jobs, but he had not been able to get full-time employment after graduation. There was no evidence that R.W. was suffering from any lack of financial stability on Angela's part.
To the extent Nate challenges the trial court's overall finding that it was in R.W.'s best interest to award custody to Angela, we find no clear error. The trial court specifically rejected Nate's allegations that Angela had physically abused R.W., finding that Angela "has not been battering the minor child." The trial court further noted that both parties were capable of caring for R.W. It was also clear, however, that joint custody was not possible at that point because the two parents could not get along. We give trial courts special deference in cases such as this, Burr , supra , and there is good reason for it. We are convinced by our de novo review of the evidence that deference to the trial court's custody decision in this case is justified. We are simply not left with a definite and firm conviction that the trial court made a mistake in awarding custody of R.W. to Angela.
Affirmed.
Gruber, C.J., and Harrison, J., agree.