Cite as 2024 Ark. App. 496

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-463

|  |  |  |
|---|---|---|
| ABBY WALLACE | | Opinion Delivered October 9, 2024 |
| | APPELLANT | |
| | | APPEAL FROM THE CRAIGHEAD |
| V. | | COUNTY CIRCUIT COURT, |
| | | WESTERN DISTRICT |
| ROBERT PYLE | | [NO. 16JDR-22-976] |
| | APPELLEE | |
| | | HONORABLE CHRIS THYER, JUDGE |
| | | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

The parties in this case, appellant Abby Wallace and appellee Robert Pyle, were divorced by decree entered by the Craighead County Circuit Court on March 16, 2023. Wallace appeals from the decree, arguing that the circuit court clearly erred by awarding joint custody. We affirm.

Wallace and Pyle met in January 2021 and had a child together (M.C.) in December that same year. The parties were married on April 27, 2022, and separated August 27, 2022, when Wallace pursued criminal charges against Pyle for domestic battery and false imprisonment. Pyle filed for divorce on November 4, and Wallace counterclaimed. Both parties sought primary custody of M.C. A temporary order placed custody of M.C. with Wallace with Pyle having visitation.

A final hearing was held March 8, 2023, wherein Pyle consented to the divorce and orally amended his complaint to seek joint custody rather than sole custody. At the time of trial, Pyle had pending criminal charges for domestic battery, false imprisonment, and interference with emergency communications.

The entirety of the testimony and proof at the divorce hearing related to the custody of and visitation with M.C. Wallace's position below was that she should have sole custody due to Pyle's drinking problem and repeated pattern of domestic abuse. She testified that shortly before M.C. was born, Pyle got a DWI. Pyle voluntarily went to a seven-month rehab in January 2022 but left the program after about two months. Shortly after leaving the program, Wallace and Pyle married. Pyle then received a second DWI in July 2022 that required him to have an interlock device in his car.

In accusing Pyle of a pattern of domestic abuse, Wallace recalled several instances. Some instances occurred before the parties were married and included allegations that Pyle had at different times locked her in a closet ("until she settled down"), pinned her on the bed and yelled at her, and disclosed suicidal ideations to her via text message. Pyle did not dispute the text message, said he thought they were "play fighting" regarding the yelling, and disputed the closet allegation entirely.

Wallace testified to another instance of abuse that occurred the weekend of August 26, 2022. Wallace said Pyle was drunk, became aggressive toward her, held her down, and called her a "cry baby." Wallace left that night and stayed with a friend. When she came home Sunday, she told Pyle she wanted a divorce. She thought Pyle was drunk or high. He

2

would not let her leave, so she used her phone to record him. She said he took her phone, pinned her down, hit her, and pocketed her phone. Wallace pressed charges over this incident, and due to the pending charges, Pyle opted not to testify about the matter.

Pyle testified that he no longer has a drinking problem but that he still occasionally drinks. He explained that he was sober for ten months until the last month of his relationship with Wallace because he and Wallace thought they could "hold it together" and drink socially. Pyle testified that he recently started dating someone but had not yet introduced her to M.C.

In addition to the parties, Wallace's grandmother testified. She said that M.C. was not present during the August 28 incident because he was at her house getting a bath.

Bobby Johnson, a private investigator, testified that he was hired by Pyle after the temporary hearing to prove that Wallace was living with her boyfriend instead of her mother as reported. Wallace testified that she stayed at her boyfriend's house with M.C. four to five nights a week.

Pyle's sister testified that Pyle had come to live with her and her family after the no-contact order was entered. She testified that Pyle would exercise his visitation at her house, and she said he is nurturing and hands on with M.C. She did not have any concerns with Pyle caring for M.C.

Following testimony, the court took the case under advisement and issued a thoroughly written decree on March 16, 2023. In granting the parties joint custody of M.C., it found that Wallace had failed to prove a pattern of domestic abuse by a preponderance of

the evidence and had failed to overcome the joint-custody presumption by clear and convincing evidence. Wallace timely appealed.

## I. *Joint Custody*

This court reviews matters of child custody de novo on appeal, but the circuit court's findings are not reversed unless they are clearly erroneous. *Janjam v. Rajeshwari*, 2020 Ark. App. 448, 611 S.W.3d 202. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Whether a circuit court's findings are clearly erroneous turns in large part on the credibility of the witnesses, and special deference is given to the circuit court's superior position to evaluate the witnesses, their testimony, and the child's best interest. *Id.*

The primary consideration in child-custody cases is the welfare and best interest of the child, with all other considerations being secondary. *Id.* In an original child-custody determination, there is a rebuttable presumption that joint custody is in the best interest of a child. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(a)* (Supp. 2023). The presumption may be rebutted in four instances. Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(b)(1)–(4)*. Here, there are two relevant rebuttable presumptions: (1) if the court finds by clear and convincing evidence that joint custody is not in the best interest of the child and (2) if there is a finding by the preponderance of the evidence that a parent has "engaged in a pattern of domestic abuse." Ark. Code Ann. § 9-13-101(a)(1)(A)(iv)*(b)(1)* and *(c)(2)*. A presumption is a "legal inference or assumption that a fact exists, based on the known or proven existence of some other fact

4

or group of facts. . . . A presumption shifts the burden of production or persuasion to the opposing party, who can them attempt to overcome the presumption." *Stills v. Stills*, 2010 Ark. 132, at 9, 361 S.W.3d 823, 828 (citing *Black's Law Dictionary* 1223 (8th ed. 2004)).

## A. Pattern of Domestic Abuse

In her first point on appeal, Wallace argues that the circuit court erred in finding that Pyle did not engage in a pattern of domestic abuse under § 9-13-101(c)(2) such that she did not overcome the presumption of joint custody. She contends all the incidents the court addressed in the decree fell within the scope of domestic abuse as defined in Ark. Code Ann. § 9-15-103(4) (Repl. 2020).

"Domestic abuse" is defined as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members." Ark. Code Ann. § 9-15-103(4).[1] It is important to note that our statutes do not define "pattern of domestic abuse," so we treat what constitutes a "pattern of domestic abuse" as a question of fact. *Oates v. Oates*, 2010 Ark. App. 346, at 3.

In *Oates*, the wife sought sole custody of the children due to a pattern of domestic abuse by her husband. The court found that the husband had engaged in two incidents of domestic abuse approximately seven years a part with an intervening act of domestic abuse by the wife upon the husband. Even though the court found two incidents of domestic abuse,

---

[1]The decree erroneously cites Ark. Code Ann. § 9-15-101(4) twice to define "domestic abuse," but it is clear the court intended to rely on Ark. Code Ann. § 9-15-103(4) because the court's first reference in the decree to the statutory definition of domestic abuse was to § 9-15-103(4), which is accurate.

it did not find that a pattern of domestic abuse had been established, which we held was not clearly erroneous. We reasoned that without a statutory definition, we declined to address the issue as a matter of law but rather one of whether sufficient evidence supported the court's decision.

Here, in the twenty-seven-page decree, the court addressed "four instances of alleged domestic abuse prior to the marriage and one continuous incident that led to the parties' separation." In giving little weight to the instances that occurred before the marriage, the court considered all the evidence presented and weighed the evidence accordingly. It is clear the court considered the effect of all the incidents together and that it did not find Wallace fully credible. For example, in addressing the incidents raised by Wallace the court used language such as "alleged abuse"; Pyle was "allegedly intoxicated"; and "both parties are young" and "immature." Notably, the decree states, "Even assuming the Court were to give full credence to the facts of these events as described by [Wallace], the Court gives very little weight to either." The court was within its province to do this. As our longstanding caselaw states, we know of no cases in which the superior position, ability, and opportunity of the circuit court to observe the parties carry as great a weight as in those involving children. *Heileman v. Cahoon*, 2024 Ark. App. 72, at 14, 685 S.W.3d 256, 264.

Wallace's argument goes to the sufficiency of the evidence, despite her couching it as a question of law. Therefore, her contention that the court improperly ignored or discounted the premarital incidents lacks merit. Wallace argues that because the custody statute, Ark. Code Ann. § 9-13-101, does not make any distinction between marital and premarital abuse,

and the statute defining domestic abuse, Ark. Code Ann. § 9-15-103, specifically includes individuals in dating relationships, the court erred. However, as explained in *Oates*, we treat what constitutes a "pattern of domestic abuse" as a question of fact, and the court was within its authority to weigh the evidence as it saw fit. *See McCandlis v. McCandlis*, 2024 Ark. App. 339, at 5 (trial court considered that both parties had engaged in domestic abuse but noted that wife's behavior occurred before the marriage). Wallace's argument is merely a request to reweigh the evidence.

Accordingly, we affirm the court's decision that Wallace did not establish by a preponderance of the evidence that Pyle had engaged in a pattern of domestic abuse such that joint custody was inappropriate.

### B. Best Interest

Next, Wallace argues the record contains clear and convincing evidence that joint custody was not in M.C.'s best interest. She first contends that even if the court found only one incident of domestic abuse, it failed to adequately consider the abuse under Arkansas Code Annotated § 9-13-101(c)(1), which provides, in relevant part:

> If a party to an action concerning custody . . . has committed an act of domestic violence against the party making the allegation . . . and such allegations are proven by a preponderance of the evidence, the circuit court must consider the effect of such domestic violence upon the best interests of the child, whether or not the child was physically injured or personally witnessed the abuse, together with such facts and circumstances as the circuit court deems relevant in making a direction pursuant to this section.

Here, the court found that the incident of domestic violence had no discernable effect on M.C. It reasoned that M.C. was only nine months old at the time of the August incident,

7

he was safely secured in his car seat on the ground for part of the incident, and he was not present for the remaining part. The court further found that "[this] proof should be added to the mix of other proof in the case and then weighed in order to make a best interest determination." All section 9-13-101(c)(1) requires is that the circuit court consider the effect of the domestic violence on the best interest of the child, which is what the court did. *See Szwedo v. Cyrus*, 2020 Ark. App. 319, at 12, 602 S.W.3d 759, 767.

Wallace further argues that the circuit court failed to give adequate consideration to the evidence of alcohol abuse and suicidal threats in its best-interest-of-the-child analysis. However, this argument is also merely a request to reweigh the evidence.

Each child-custody determination ultimately must rest on its own facts. *McCandlis*, 2024 Ark. App. 339, at 9. Consider the following. In *Wakefield v. Bell*, the husband accused the wife of battering the child, but the circuit court rejected the allegation and awarded custody to the wife, finding that "joint custody was not possible at that point because the parents could not get along." *Wakefield*, 2018 Ark. App. 120, at 8, 542 S.W.3d 908, 913. In *McCandlis*, we affirmed the circuit court's award of custody to the wife when the court found that joint custody was not in the children's best interest due to the husband's work schedule, his alcohol use around the children, his multiple threats of physical harm toward the wife, and one child's preference for living with the wife and fear of the husband. Additionally, the circuit court noted the husband's angry demeanor during trial, and it ordered him to complete anger-management classes before exercising visitation. *Id.*

Compare these fact patterns to *Zihala v. Staley*, 2024 Ark. App. 269, 689 S.W.3d 82, where we affirmed that the wife failed to rebut the presumption that joint custody was in the child's best interest following the parties' divorce. There, the wife had primary physical custody during the parties' four-year separation before their divorce and had been the child's caretaker and physical custodian for his entire life due, in part, to the husband's struggle with alcoholism. However, the wife did not allege that the husband's status as a recovering alcoholic prevented him from being a good parent; she testified that there had been no incidents since the husband had achieved sobriety that caused her concern about his sobriety, and she admitted that the child had never been harmed in the husband's care and that husband and the child had a meaningful relationship. Also, in *Cunningham v. Cunningham*, 2019 Ark. App. 416, 588 S.W.3d 38, in affirming the joint-custody award, we acknowledged the significant level of animosity between the parties but noted that the record demonstrated both parties were capable parents, loved the children, and were equally involved in their activities.

Turning to the facts at hand, the circuit court made extensive findings in support of its conclusion that Wallace failed to rebut that joint custody was not in M.C.'s best interest. Notably, it found Pyle credibly testified that he has stopped drinking other than an occasional social drink, and it credited the other witnesses' testimony that Pyle is a "loving, nurturing, and caring father." The circuit court acknowledged that joint custodial parents must possess the ability to cooperate in reaching shared decisions affecting the child, but based on the proof presented, "[it was] convinced that these parties possess the ability to

9

sufficiently cooperate with each other." We give special deference to the circuit court in custody cases, and we hold that the circuit court did not err in finding that the joint-custody presumption had not been rebutted and in awarding the parties joint custody of M.C.

## II. *Biased Statements*

Last, Wallace argues that in light of some of the court's comments toward her, the court had a bias against her from the beginning and had prejudged the custody issue. Wallace generally contends that the court did not take her seriously and that the court made it clear it was not willing to earnestly consider evidence of premarital abuse.

She concedes that she failed to move for the judge's recusal and asks that we conduct a plain-error review under *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). However, she does not state which of the exceptions would apply in this case, nor does she argue how any of the exceptions would apply in this case. It is not the duty of this court to make her argument. *See McDaniels v. State*, 2012 Ark. App. 219. Further, the application of the exceptions listed in *Wicks* is limited to specific constitutional and statutory-error arguments that are distinct from sufficiency-of-the-evidence arguments. *AP v. State*, 2019 Ark. App. 373. Accordingly, we decline to extend *Wicks* to the case at hand.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Owens, Mixon, Heller & Smith, P.A.*, by: *Aaron D. Heller* and *Haley Smith*, for appellant.

*The Troutt Law Firm*, by: *R. Scott Troutt*, for appellee.